## KING et al. v. SULLIVAN et al.

| 93 | 621 |
|----|-----|
| 111 | 195 |
| 93 | 621 |
| 112 | 718 |
| 93 | 621 |
| 116 | 307 |
| 116 | 498 |
| 93 | 621 |
| 119 | 993 |
| 93 | 621 |
| f130 | 612 |

1. While unpaid stock subscriptions are assets of an insolvent corporation for the benefit of its creditors, of which a court of equity will by proper proceeding *in personam* compel payment when the corporation fails or refuses to call for or collect the same, the corporation itself is a necessary party to such a proceeding, and jurisdiction for this purpose over a foreign corporation which has no office, officer, agent, or place of business in this State, cannot be obtained by merely serving the corporation by publication.
2. In order to proceed by petition, whether at law or in equity, against specific assets of a foreign corporation, such as bonds or stocks, for the purpose of subjecting them to the satisfaction of a judgment against the corporation, where no service can be had upon it otherwise than by publication, the suit must be one *quasi in rem,* and the assets must be described so that they can be iden-

tified and seized, the jurisdiction to adjudicate or decree in such case depending upon an actual seizure lawfully made before or pending the action. An allegation made on information and belief is insufficient which, in effect, charges that the foreign corporation had, without consideration, delivered to its codefendants (some of its stockholders resident in this State) bonds and stocks of a named railroad company, without further description of the property sought to be reached and appropriated.

3. The prayer that each of the defendants sued with the corporation be compelled to answer whether, at any time, he received from the corporation any bonds or stocks, and for the appointment of a receiver to sue for and realize their value for the benefit of the complaining creditors, will not aid the jurisdiction.

March 26, 1894. Argued at the last term.

Equitable petition. Before Judge HENRY. Floyd superior court. March term, 1893.

M. A. Sullivan filed his petition against Jack King, J. C. Clements, C. T. Clements, J. B. S. Holmes, J. W. Cavender, S. S. King, Park Harper, W. T. & O. H. McWilliams, R. T. Fouché, J. H. Rhodes, E. L. Culberson, J. C. Wardlaw, J. D. Williamson, and the Rome & Carrollton Construction Company, a foreign corporation which was made a party defendant by order passed after the filing of the original petition, and which was served by publication only. A demurrer was filed by the defendants other than Williamson and the construction company. Sullivan and others offered amendments to the petition, which were allowed over objections, and the demurrer was overruled.

The original petition alleged: Petitioner holds a judgment for a sum named, rendered December 10, 1889, in the city court of Floyd county, against the Rome & Carrollton Construction Company, a corporation chartered outside of Georgia; upon which execution has issued, and the sheriff of that county has returned the same with entry of *nulla bona.* The principal business of the construction company in Georgia was the building of the Chattanooga, Rome & Columbus railroad, extending from Chattanooga, Tennessee, through Floyd

and other Georgia counties to Carrollton. Its principal office in Georgia is in Floyd county. Williamson, who was president when petitioner's debt was created, and is now one of its stockholders, resides in Floyd county. Jack King, J. C. and C. T. Clements and Holmes, all citizens of Floyd county, and Cavender of Walker county, Georgia, are also stockholders and were when the debt was created. It incurred the debt in building the road, for work and material done and furnished by petitioner in the building under a contract with it. He has been unable to find any property of it upon which to levy the *fi. fa.* The persons above named have subscribed to large amounts of its stock, the exact amount of which is unknown to him, but which he is informed, believes and charges have not been paid up by them, such payments as were made being only colorable and not in good faith. On information and belief he charges, that whenever it made a call upon the stockholders for all the money paid in by them, each of them received bonds and stocks of the railroad company named above, assets of the construction company, of equal or greater value than the money paid in, which bonds and stocks were used for their private benefit and not for the benefit of the construction company. Large sums of money are still due and unpaid by them upon their stock subscriptions. The construction company is insolvent unless the subscriptions to its stock can be made subject to its debts; and he prays that each of said stockholders be compelled to answer how much stock he subscribed for, what was the date of his subscription, how much money he has paid in on the subscription to the construction company, giving dates and amounts, what, at the time of any such payment or prior or subsequent thereto, he received from the person to whom he made the payment or from any one acting for him or acting for the construction company, whether at any such time he received

any bonds or stocks of said railroad company or any-
thing of value, and from whom did he receive what-
ever was paid or delivered to him. Also, to state the
names and residence of the subscribers to the stock, the
amount subscribed by each, the amount paid in upon
each subscription, and how it was paid, and all the de-
tails attending the payment, including the distribution
of the bonds or securities of any kind. He prays also
for a receiver to take charge of the assets, including the
subscription books of the construction company, and
for authority and direction to the receiver to sue the
stockholders for such unpaid stock as may be due, and
to sue for and to collect other debts due the company;
that when recovered, the receiver be ordered to pay over
to petitioner the amount obtained, or so much as may
be necessary to pay his claim with costs, etc.; that
should the court refuse to appoint a receiver, then de-
fendants be ordered to pay in severally and jointly
enough to pay his claim and costs. He charges that the
amount due by each of said stockholders upon stock
subscriptions is largely in excess of his claim, and that
the officers of the company refuse and fail to collect
and call in said subscriptions either for its benefit or
that of its creditors. He amends by alleging: He sues
in behalf of himself and such other creditors of the
company as may properly come in and be made parties
plaintiff. At the time his debt was created and his judg-
ment obtained, the defendant stockholders had subscribed
and contracted for, and owned, stock in the construction
company, and had received assets from it in various
amounts here set forth. All of the shares of stock were of
the par value of $100, and the shares subscribed for by
defendants have not been paid for by them, but the
amounts of subscription are still due and unpaid. The
bonds and stocks alleged to have been delivered to said
stockholders were improperly and illegally delivered,

and such delivery was without consideration. Said stocks and bonds were the assets of the construction company and were property to be used for payment of its debts; their delivery to its stockholders was illegal and void as against its creditors, and they are liable to be followed in the hands of the stockholders so receiving them. The construction company, at the time of filing the original suit, had no place of business, office, officer or agent in Georgia, and therefore personal service could not be made upon it. Petitioner prays for the same relief against it that was prayed against the defendants to the petition, so far as applicable, for process, and that service be perfected upon it by publication. He further prays that the defendant stockholders be ordered to pay into court the sums found to be unpaid on their subscriptions, and to deliver into court the assets of the construction company received by them, or pay in the value of such assets or so much thereof as may be necessary to pay the indebtedness to all parties who may be plaintiff, and reasonable attorney's fees; and for general relief.

Carter & Company alleged that they had obtained a judgment against the construction company in Floyd superior court at a certain time and for a certain amount, upon which execution had been issued and which had been returned with entry of *nulla bona*. They adopted the allegations made by petitioner, and asked to be made parties plaintiff, and for judgment against defendants, and for general relief. A similar amendment was offered by Glenn for the use of Drennon.

Sullivan further amended by alleging that all the stockholders declared against are residents of Georgia and are all the resident stockholders that he knows of in Georgia; that at the time the securities and assets of the corporation were so delivered to said stockholders, they were delivered for the purpose of avoiding the lia-

v 93-40

bilities of said stockholders, upon their subscription to the stock, by reason of the contracted indebtedness which was contemplated and arranged to be created and incurred by the corporation, which intention and purpose was known to all of them when they received said assets; and that the assets so received were necessary to pay the debts of the company, and when so received impaired its capital stock to the extent of rendering it insolvent.

The grounds of demurrer, so far as material, are sufficiently shown in the decision.

DABNEY & FOUCHÉ and W. W. BROOKES, for plaintiffs in error.   DEAN & SMITH and G. & W. HARRIS, contra.

LUMPKIN, Justice.

1. It is well settled law that unpaid stock subscriptions are assets of an insolvent corporation, which, when properly reached, may be applied for the benefit of its creditors.   It is primarily the duty of the proper officers of the corporation to compel, for this purpose, payment of such unpaid subscriptions; but if they fail or refuse to call for and collect the same, a court of equity, by an appropriate proceeding, will enforce such collection, and properly apply the proceeds thereof to the claims of the creditors.   To such a proceeding, however, the corporation itself is a proper and necessary party.

The above propositions are so obviously sound, and so generally recognized as correct, it is hardly necessary to support them with authority.   We have before us, however, two cases directly in point, which we will cite: Wetherbee v. Baker et al., 35 N. J. Eq. 501; First National Bank of Hannibal v. Smith et al. (Mass.), 6 Fed. Rep. 215.

One reason, among others, why the corporation is a necessary party, is the fact that it has an undoubted right to be heard upon the question as to whether or

not there is a necessity for collecting the unpaid stock subscriptions, and if so, as to what disposition should be made of the same. The equities existing between the corporation and its stockholders who have not fully paid for their stock are involved, and these equities cannot be adjusted without having the corporation before the court, so that it can be precluded by the judgment or decree rendered. Otherwise, if the creditors of a corporation were to compel payment of unpaid subscriptions from its stockholders without making the corporation a party, there would be apparently nothing to prevent the corporation from again compelling payment to itself by these same stockholders, as it would not be bound by a judgment or decree rendered in a case in which it had not been heard.

A proceeding of the kind above mentioned is, so far as the corporation is concerned, a proceeding *in personam;* and therefore, in order to give the court jurisdiction for the purpose indicated, actual service is essential. In the case of a foreign corporation which has no office, officer, agent or place of business in this State, such jurisdiction cannot be obtained by merely serving the corporation by publication. This doctrine is supported by the principle announced in Pennoyer *v.* Neff, 95 U. S. 714, in which it was held that a personal judgment, rendered by a State court against a non-resident of the State, in an action upon a money demand, was without validity, where the defendant was served by publication, but upon whom no personal service of process within that State was made, and who did not appear.

2. Another object of the petition filed in the present case was to compel some of the stockholders of the corporation who resided in this State to surrender certain bonds and stocks of the Chattanooga, Rome and Columbus Railroad Company, without further description of the same, and which the petition, on mere information and

belief, charged that the Rome & Carrollton Construction Company had, without consideration, delivered to these stockholders. The theory of the petition was, that these securities really belonged to the latter company, and should be subject to the payment of its debts. In so far as the relief thus sought is concerned, the proceeding is one *quasi in rem*, there being, for the reasons already stated, no jurisdiction over the construction company giving the petition any standing in court as a proceeding *in personam*. Had the petitioners endeavored to reach these alleged assets of the construction company by attachment and levy, it would have been necessary to have the assets seized by the levying officer before the court would have jurisdiction to render a judgment; and in order to have the levy made, it would be incumbent upon the plaintiffs to locate and identify the property so that the same could be pointed out to the sheriff. This being an effort to proceed by petition against the stocks and bonds as specific assets of the foreign corporation, and it being in the nature of a proceeding *in rem*, we think the description given of the stocks and bonds entirely insufficient. It would be impossible, under such a description, to identify and seize them. We think the jurisdiction of the court to make any adjudication or decree as to these assets, in a case of this kind, depends upon an actual seizure lawfully made before, or pending, the action. Otherwise the plaintiffs, by a mere fishing petition, might secure a substantial right to obtain which the remedy by attachment and levy would seem to be amply sufficient if they could identify and point out the property sought to be reached and appropriated to their claims. The fact that they cannot do this may make the remedy by attachment and levy unavailable; but even if this be so, it affords no reason for placing them upon better ground merely by going into equity. Had they begun by attachment, and caused garnishments to

be served on the stockholders who, according to their allegations, were holding property really belonging to the corporation, the question presented would be different.

3. We do not think the prayer that each of the stockholders who was made a party defendant to the action might be compelled to answer whether, at any time, he received from the corporation any bonds or stocks, and for the appointment of a receiver to sue for and realize their value for the benefit of the complaining creditors, aided the jurisdiction. In order to authorize the granting of the relief sought by the petition so far as these stocks and bonds are concerned, it was necessary for the corporation to have been served in such a way as to give the court jurisdiction over it *in personam*, and as this could not be done by publication, we are at a loss to perceive how, by a mere prayer for discovery against some of the stockholders, the plaintiffs could be put on any better footing, so far as the question of jurisdiction is concerned. The jurisdiction depends, not upon the prayers and allegations of the petition, but upon the fact of service.

Besides, the prayer for discovery hardly amounted to a proper compliance with the requirements of section 4176 of the code, which declares that when discovery is sought, not only shall it be specially prayed, but also that interrogatories regularly numbered shall be embodied in the petition as to every point on which discovery is sought, and the names of the defendants stated from whom answers under oath or affirmation are required.            *Judgment reversed.*