## REYNOLDS AND HAMBY ESTATE MORTGAGE COMPANY LIMITED *v.* MARTIN.

1. A petition for a receiver and other equitable relief against two foreign corporations, two individual citizens and residents of another country, and the sheriff of the county in which the petition is filed, the sheriff being only a nominal defendant, which does not set forth that either of the foreign corporations has any office, officer, agent, or place of doing business in this State, or that either of the alien individuals resides in said county or is to be found therein, does not set forth any jurisdiction in the superior court of the county of the sheriff's residence in this State, for a proceeding in personam, or a right to obtain a personal judgment against any one of the four principal defendants.   An entry of service by the sheriff can not supply the omission to set forth jurisdiction in the petition.

2. No ground for equitable relief to the defendant in error as an individual is set forth in the petition.

(a) It is not made to appear that what he calls a fraud was a fraud upon him in any legal sense.

(b) The matters and things set forth in the petition as a reason for interfering with a final judgment obtained by the plaintiff in error against the defendant in error, also set forth in the petition, could have been pleaded to a suit on the bond resulting in this judgment, if they possessed any legal efficacy.

(c) The delay and laches of the defendant in error furnish a further reason for non-interference by a court of equity.

3. The defendant in error does not show that as a stockholder of the two foreign corporations he is entitled to a receiver to take charge of their assets in this State.

Argued October 8, — Decided October 31, 1902.

Equitable petition. Before Judge Estes. White superior court. April 29, 1902.

*H. H. Perry* and *I. L. Oakes,* for plaintiff in error.

*Spencer R. Atkinson, W. A. Charters,* and *G. S. Kytle,* contra.

ADAMS, J.    John Martin filed in the superior court of White county, in this State, a petition for relief against the Gold Reefs of Georgia Limited, the Reynolds & Hamby Estate Mortgage Company Limited, alleged in the petition to be corporations of the Kingdom of Great Britain and Ireland and there domiciled, and Frederick Hunt and Edwin Bowley, also alleged to be citizens of that kingdom, and the sheriff of White county, the last named being only a nominal defendant and not one against whom, under the decisions of this court, any substantial relief was prayed.    A separate demurrer to this petition was filed by the Reynolds & Hamby Estate Mortgage Company on various grounds, which was overruled by the court below, and a bill of exceptions has been taken to the judgment of the court overruling this demurrer.    The prayers of the petition are, for process against each of the defendants named, requiring them to appear at the next term of White superior court to answer the complaint; for the appointment of a receiver to take charge of and, under the jurisdiction of the court, enforce the collection of a judgment in favor of this company against the defendant in error, set forth in the petition; to retain the proceeds of this judgment to answer such final judgment and decree as may be rendered in favor of the defendant in error; that the receiver be required to take possession of and hold, subject to the final decree and direction of the court, certain real property alleged to belong to the corporation known as the Gold Reefs of Georgia Limited, one of the defendants, to the end, if the court should finally decree in favor of the defendant in error against the Gold Reefs of Georgia Limited that this company is indebted to him in the sum of 1,826 pounds sterling, alleged to have been obtained from the defendant in error in consequence of a gross fraud, that the defendant in error might in this way realize on any judgment which might be rendered in his favor in the premises; for a writ of injunction preventing this company from encumbering its Georgia property, and the Reynolds & Hamby Estate Mortgage Company Limited from assigning or setting over its judgment to

any third party, and preventing the sheriff from advertising the property for sale under this judgment; and finally, for general relief. There is no specific or direct prayer for a judgment or decree against any defendant. It is not in terms alleged that the defendant in error is entitled to a decree against any defendant, and the indication of the desire to obtain a decree against the Gold Reefs of Georgia rests upon implication, rather than upon specific statement or prayer. The petition sets forth that the defendant, the Reynolds & Hamby Estate Mortgage Company Limited, had, at the November term, 1901, of White superior court, obtained against the defendant in error a general as well as a special judgment for the full amount of a bond given by the defendant in error to this company on the 22d day of February, 1898, covering the sum of 4,000 pounds sterling, principal, and secured by a mortgage, which judgment includes 1,826 pounds, of which, according to the petition, the petitioner has been cheated and defrauded, as stated in the petition. It is admitted in the petition that the defendant in error received 2,174 pounds of the face of his bond, and the general purpose of the petition is to obtain redress as to this balance of 1,826 pounds through the intervention of a court of equity by the appointment of a receiver, the collection of the judgment, and the seizure of the real property heretofore mentioned. The petition also sets forth the alleged rights of defendant in error as a stockholder in the two corporations, and the threatened destruction of those rights. There are no specific prayers that seem to be strictly germane to the status of a stockholder, and these allegations may be inserted for the purpose of giving additional weight and strength to the appeal of the defendant in error for relief as an individual against what he denominates a gross fraud.

1. There is no statement anywhere in the petition which suggests that any one of the four principal defendants has any residence of any kind in the County of White. All of them are alleged to be citizens and residents of the Kingdom of Great Britain and Ireland. Neither of the two corporations is alleged to have any agent of any kind in this county. The sheriff of the county is made a party defendant for the purpose of arresting his proceeding under the execution based upon the judgment above mentioned. His connection with the case as a nominal defendant would not give to the court jurisdiction of the case. *Rounsaville* v. *McGinnis,* 93 *Ga.*

579; *Dade Coal Co.* v. *Anderson,* 103 *Ga.* 810.   We do not see how the court could render a judgment in personam against any one of the defendants, with or without service by publication.   So far as we are aware, all the authorities are against jurisdiction for this purpose, unless, of course, the non-resident is found in this State and here served.   See, for example, *Dearing* v. *Bank of Charleston,* 5 *Ga.* 505 et seq.; *Schmidlapp* v. *Insurance Co.,* 71 *Ga.* 246; *King* v. *Sullivan,* 93 *Ga.* 627.   In the last-mentioned case, this court, through Mr. Justice Lumpkin, says (noticing the case of Pennoyer *v.* Neff, freely used in the argument by the distinguished counsel for the defendant in error): "A proceeding of the kind above mentioned [one against specific assets of a foreign corporation for the purpose of subjecting them to a judgment against the corporation] is, so far as the corporation is concerned, a proceeding in personam; and therefore, in order to give the court jurisdiction for the purpose indicated, actual service is essential. In the case of a foreign corporation which has no office, officer, agent, or place of business in this State, such jurisdiction can not be obtained by merely serving the corporation by publication.   This doctrine is supported by the principle announced in Pennoyer *v.* Neff, 95 U. S. 714, in which it was held that a personal judgment, rendered by a State court against a non-resident of the State, in an action upon a money demand, was without validity, where the defendant was served by publication, but upon whom no personal service of process within that State was made, and who did not appear."

2. Treating the petition as a proceeding in rem, that is to say, as an application for an equitable seizure through the medium of a receiver of the property of the defendant, to be held until the final decree in the case, and recognizing the ample power of a court of equity of this State to so seize such property and render a judgment against the same in a proper case made, we nevertheless hold that no such case is stated in this petition.

(*a*)  We are unable to find how a fraud, in any legal sense, has been perpetrated upon the plaintiff below.   He admits giving to the Reynolds & Hamby Estate Mortgage Company his bond under his hand and seal, whereby he acknowledges to have received from this company as a loan 4,000 pounds sterling, but says that at the time he executed this instrument he did not suspect, and had no

reason to suspect, the purpose of this company, in connection with the Gold Reefs of Georgia to perpetrate upon him the gross fraud which he undertakes to set out. It seems that the defendants Hunt and Bowley were to make the loan which the Reynolds & Hamby Estate Mortgage Company was subsequently organized to carry; that the defendant in error received 2,174 pounds in cash; that he was induced to believe that before the balance of the loan, which, under the agreement, was to be paid in stock of the Gold Reefs company, could be issued to him, it would be necessary for him to subscribe to the stock of the Gold Reefs company to the amount of 1,826 pounds; and that in payment of this sum he drew a draft in favor of the Gold Reefs company on the Mortgage company; that this draft (he claims) ought to have been paid in cash, and, instead of the Mortgage company so paying it, the Gold Reefs company exchanged its own stock with the Mortgage company for stock of the latter company of the value of the face of the draft. The pleader complains in strong terms of this payment, and alleges that it did him substantial harm as a stockholder in these companies, and as the owner of property held under a mortgage by the mortgage company. We do not see how the drawer of the draft can complain of this, because of the principle that an agreement to pay means, without more, a payment in cash. The petition does not show, certainly with any clearness, that this did not occur before the giving of the bond. The natural inference would be that it occurred before this, and was probably known by the defendant in error when he executed this obligation, acknowledging at the date of the obligation an indebtedness in the full amount of the loan. He seems to have received all that his contract contemplated, viz., 2,174 pounds in cash, and the balance in the stock of the Gold Reefs company. The complaint that the officers of the Gold Reefs company saw fit to receive, in payment of its draft, shares of the Mortgage company instead of cash, seems to be predicated upon the idea that this company thus surrendered its opportunity of collecting cash, which could have been used in its mining operations to the advantage of the defendant in error as a stockholder, and also as the owner of the property in the improvement of which he expected this money to be used. The defendant in error voluntarily became a stockholder in these foreign corporations, and is presumed to know that he thereby conferred upon them a

large discretion as to their obligations and the use of money received by them. It is stated in the declaration that Hunt and Bowley agreed that the stock of the Gold Reefs of Georgia, which was to be delivered to petitioner in lieu of cash, should be paid for by them; that this was the substance of their agreement, and was the sole consideration inducing him to accept said stock in lieu of cash; and that it was well known to Hunt and Bowley and to the said Gold Reefs of Georgia, at the time petitioner undertook to receive said stock, that this company was in practically an insolvent condition, not even having an interest in the property of petitioner, upon which property was principally based the organization of the company. The agreement between the petitioner and Hunt and Bowley, set forth in the petition, seems to provide for this payment. The bond subsequently given to the Mortgage company, more than a year thereafter, does not suggest, nor does any allegation in the petition state, that this agreement entered in any way into the consideration as between the Mortgage company and the petitioner. As already suggested, we think it is fairly inferable that the petitioner gave this bond to the Mortgage company when cognizant of the breach of the contract. We do not find any allegations in the petition which negative this conclusion. In the language of the headnote, it is not made to appear that what he calls a fraud was a fraud upon him in any legal sense.

(*b*) It seems to us that the judgment obtained by the Mortgage company against the defendant in error, in November, 1901, concludes him as to the claims made in his petition for relief in the case at bar. If what he says be true, and his allegations mean anything, they mean that he did not owe the Mortgage company 1,826 pounds of the 4,000 pounds embraced in the bond and the judgment. His contention seems to be that the consideration as to this part of the debt had really failed. In the latter part of paragraph 8 he alleges that " as a result of said conspiracy, so entered into between the said Gold Reefs of Georgia Limited, and the said Hunt and Bowley, and the said *Reynolds & Hamby Estate Mortgage Company Limited,* he has been robbed by the said Gold Reefs of Georgia Limited, the said Hunt and Bowley, and the said Reynolds & Hamby Estate Mortgage Company Limited, of the sum of 1,826 pounds." In paragraph 10 he alleges that this mortgage company " has caused the said mortgage given by him to secure

said bond to be foreclosed in the superior court of White county, and as well has obtained against him a general judgment for the full amount promised to be paid in the terms of said bond, with interest, which said sum includes the 1,826 pounds, of which your petitioner has been cheated and defrauded as aforesaid." In another portion of paragraph 8 the petitioner says " that neither Hunt and Bowley nor the Gold Reefs of Georgia Limited ever advanced to him nor paid on his account the said sum of 1,826 pounds, but, on the contrary, accepted from the Reynolds & Hamby Estate Mortgage Company Limited its own stock in lieu of cash, left the Gold Reefs of Georgia Limited in an insolvent and helpless condition, and thus deprived your petitioner of the very advantage he had in view when he undertook to receive the stock of the Gold Reefs of Georgia Limited, in lieu of cash." He directly connects the mortgage company with the conspiracy and fraud resulting in a failure of consideration, as to the 1,826 pounds, and avers it was fraudulently organized for the very purpose of cheating him out of this consideration; and if we give full effect to all that the defendant in error claims, and his conclusions therefrom as to their legal efficacy, we would necessarily determine that he did not owe this part of the bond to the mortgage company, and that it was not entitled to a judgment for these 1,826 pounds. It is not pretended that the defendant in error was not fully cognizant of all the facts set out in his petition when he was proceeded against in White superior court, in a suit wherein a general judgment was sought and secured. "A judgment of a court of competent jurisdiction is conclusive between the same parties and their privies as to all matters put in issue, or which, under the rules of law, might have been put in issue in the cause wherein the judgment was rendered." Civil Code, § 3742. This section of the code codifies a well-established and familiar principle. See *Kenan* v. *Miller*, 2 *Ga.* 329; *Watkins* v. *Lawton*, 69 *Ga.* 674-5, with the general authorities cited in this last decision.

(c) As we understand the petition, more than four years elapsed after the perpetration of the alleged fraud, before any application was made for relief. The petition suggests that the petitioner desires to rescind the contract under which he received this stock of the Gold Reefs company, because in the latter part of the petition, immediately before the prayers, appears the following statement:

"Petitioner now and here tenders to the court for delivery to the Gold Reefs of Georgia Limited the stocks of that company received by him as aforesaid in payment of his draft drawn as aforesaid," etc. "But in order to the rescission he must promptly, upon discovery of the fraud, restore or offer to restore to the other whatever he has received by virtue of the contract, if it be of any value." Civil Code, § 3711. "The duty is placed upon the party who seeks to avoid the contract on the ground of fraud to make such efforts to discover the fraud as would amount to ordinary diligence in law." *Insurance Co.* v. *Robinson*, 104 *Ga.* 272. After holding this stock, which, according to his allegation, was palmed off upon him in pursuance of a fraud, he waits more than four years, taking advantage of the chances of the enhancement of the stock in value, and then, after a judgment of a court against him in a suit where he could have been heard, asks a court of equity for relief against the consequences of his own laches. Independently of any question of rescission, we observe, in the language of this court in *Sandeford* v. *Lewis*, 68 *Ga.* 484, "He that seeks relief in a court where equity reigns must come with clean hands and without unfair conduct himself. He must knock at her doors, too, without delay and laches." In *Marshall* v. *Means*, 12 *Ga.* 68, the learned judge says: "Neither equity nor law will assist those who neglect to take care of themselves. Vigilantibus non dormientibus jura subveniunt is one of the earlier maxims which we learn both at the bar and from the books." In Richards *v.* Mackall, 124 U. S. 183, the court say: "A party who makes an appeal to the chancellor should set forth in his bill specifically what were the impediments to an earlier prosecution of his claim; how he came to be so long ignorant of his rights, and the means used by the respondent to fraudulently keep him in ignorance; and how and when he first came to a knowledge of the matters alleged in his bill; otherwise, the chancellor may justly refuse to consider his case, on his own showing, without inquiring whether there is a demurrer or formal plea of the statute of limitations in his answer. To let in the defense that the claim is stale, and that the bill can not therefore be supported, it is not necessary that a foundation be laid by any averment in the answer of defendant. If the case as it appears at the hearing is liable to the objection by reason of the laches of the complainant, the court will, upon that ground, be passive and refuse relief. In the latter case [re-

ferring to a case in 94 U. S.] it was said that equity would some-
times refuse relief where a shorter time than that prescribed by the
statute had elapsed without suit." It is not necessary, however,
to stress the defense based upon delay and laches, if relief must be
denied the defendant in error as a party asserting his individual
rights, because of the conclusiveness of the judgment obtained
against him.

3. We do not see how any relief can be granted the defendant
in error against the two foreign corporations, or either of them, in
which he became a stockholder. If the corporations were domes-
tic corporations and the defendant in error were one of our own
citizens, his case is not brought within the principles laid down in
*Alexander* v. *Searcy*, 81 *Ga.* 548, and in other cases, and codified
in section 1860 of the Civil Code. It must be a strong case to
justify a court of this State in attempting to interfere, directly or
indirectly, with the affairs of a foreign corporation or the adminis-
tration of its corporate business. The fact that it proposes to take
its assets to its own domicile, that which it had when the party
asking for relief voluntarily became a stockholder, can not be such
a case. The only authorities cited by counsel for the defendant in
error upon his proposition that the courts of this State may, in a
proper case, appoint a receiver for a foreign corporation, are 2 Cook
on Stock & Stockholders, § 746, and 5 Thomp. Corp. §§ 6860 –
6861. The former authority does not in this section deal with the
subject of foreign corporations, and the language of the section is
authority for the proposition that the case must be a strong one to
justify the remedy against any corporation, and that the case made
in this petition does not comply with the requirements laid down
by this author. Judge Thompson is of the opinion that in the
case cited by him, there " may be the greatest propriety in a court
of equity laying hold of the assets and impounding them for the
benefit of the local creditors." This citation suggests expressions
that may be found in some of our decisions, to the effect that our
courts will not send its citizens to a foreign jurisdiction for the
purpose of seeking redress, when a remedy can be afforded them
by proceedings in rem against the property of foreigners. But this
defendant in error does not bring himself within the principle of
these decisions, either by averment of his citizenship or by stating
a proper case for relief. It is true that he alleges in general terms

that he was "of said county," referring to the county of White, but, as held by this court in *Carswell* v. *Schley,* 59 *Ga.* 17, "The citizenship of a defendant is not indicated with due certainty by simply describing him as 'of said county,' meaning the county in which the suit is pending. Such a description only implies a residence which subjects him to suit, and is consistent with citizenship in another State, or with alienage." The second ground of the demurrer makes the point that the pleadings do not show that the plaintiff is a citizen of this State or of the United States, and the failure to amend the petition is significant. We do not mean, of course, to hold, or to intimate, that an alien can not sue another in the courts of this State where service can be made, or that it is the policy of our courts to deny redress to aliens. We do mean to say, however, that it is not the policy of our courts to grant the extraordinary relief by injunction and receiver to aliens against aliens, when nothing appears to justify such relief except what is stated in the petition before the court. In any case, under the provisions of our code, "the power of appointing receivers and ordering injunctions should be prudently and cautiously exercised, and except in clear and urgent cases should not be resorted to." Civil Code, § 4902. The general rule decidedly is, that the courts of one State will not interfere in controversies relating to the management of the affairs of foreign corporations. 6 Thomp. Corp. § 8011. This eminent author thus states the rule: "As a general rule, actions brought by stockholders, generally in equity, to restrain or redress frauds or breaches of trust committed by the directors or officers of the corporation, or by a majority of its shareholders in the management of its business and property, can only be brought in the courts of the State under whose laws the corporation was created. This rule rests partly on jurisdictional grounds, and partly on grounds of policy and expediency."

Without passing upon all the grounds of the demurrer, we hold that, for the reasons indicated in this opinion, the court erred in not sustaining the same and dismissing the petition; and the judgment is accordingly

*Reversed. All the Justices concurring, except Lumpkin, P. J., absent.*