## 1042.   POTTS *v.* RIDDLE.

1. There was no error in overruling the demurrer to the plaintiff's petition. In cases of doubt a contract is to be construed as seeking to effect a legal object, rather than as an agreement to commit a crime. One may legally contract to purchase the notes of another even though such notes be payable in labor, provided he who has agreed to labor voluntarily consents to the transfer of his obligation to labor from the original payee of the note to another.
2. Where one is induced to purchase certain promissory notes, upon the undertaking of the promisor to perform a contract of labor, the undertaking of the purchaser of such notes to pay the agreed price for them is not avoided by the death of the maker of the notes, or by loss of the services it was contemplated he should receive in exchange for the purchase-price. To safeguard a contract of hire against loss liable to accrue by reason of the death of the employee, it must be expressly stipulated that such is the agreement of the parties.

3. In a suit upon a contract, it is not error to refuse an amendment attempting to set up fraud, in the procurement of the contract, where there is no allegation that the defendant did not know or have reasonable means of knowing the contents of the contract, especially where there is failure to allege that the defendant was in fact defrauded.

4. A citizen of full age, laboring under no disabilities, may agree, in payment of his debt, to labor for another, suggested by his creditor, instead of for the creditor himself; and, in the absence of evidence that the debtor was in any wise coerced, or even that there was any attempt to influence him into performing services unwillingly, a plaintiff who sues to recover the value of the indebtedness transferred by him to a named defendant is entitled to recover upon his contract.

Complaint, from city court of Newnan—Judge Freeman. January 30, 1908.

Argued April 22,—Decided December 23, 1908.

D. H. Riddle sued W. A. Potts on a written contract, and there was a verdict for the plaintiff. The contract attached to the petition was as follows: "Georgia, Coweta county. Know all men by these presents, that whereas Will Dews is indebted to D. H. Riddle, of Goodwater, Ala., in the sum of $272, evidenced by seventeeen notes in the sum of $16 each, payable monthly, and whereas the said Riddle is on the bond of said Dews for $500, for the appearance of the said Dews before the county court of Clay county, on a charge of murder, and, in consideration of the said Riddle remaining on said bail bond, and the further consideration that the said Dews has agreed to work with the said Riddle or at his direction, and whereas I am desirous of securing the services of the said Dews, it is therefore agreed that I will pay cash to said Riddle, $112, on the indebtedness due the said Riddle from the said Dews, and the said Riddle transferred to me seven of the $16 notes on said Dews, and that on the first day of January, 1907, if the grand jury in the county of Clay, Alabama, fail to indict the said Dews, or if he is indicted, and the said Riddle procures a nolle pros. of such indictment, then, in either of those events, I agree to pay the said Riddle on the first day of January, 1907, the further and additional sum of $113, and the said Riddle agrees to transfer to me the remainder of said notes on said Dews, except two of the same. In case said Dews is indicted and his case is not nolle prossed, then I agree to deliver said Dews back to the said Riddle, or the sheriff of Clay county, Alabama, at Ashland, Alabama, by the first day of January, 1907; and on failure to deliver

said Dews, I agree to pay the said Riddle the said sum of $113. It is understood and agreed that said Riddle is to remain on the bond of the said Dews, and continue to represent and defend him in said criminal prosecution. Witness my hand and seal to-day, February 19th, 1906.—W. A. Potts. (L. S.)"

The defendant demurred to the petition generally, upon the ground that it was insufficient in law to set forth a cause of action, and also because the allegations of the petition, and the contract itself as attached, show that the contract sued on is contrary to public policy, illegal, null, and void, because it is in violation of paragraph 17 of article 1 of the constitution of the State of Georgia, and of the thirteenth amendment to the constitution of the United States. The court overruled the demurrer.

In the defendant's answer he admitted that the copy of the alleged written contract was correct, but denied liability thereon, and, among other reasons, pleaded, in the 6th paragraph of the answer, a total failure of consideration, growing out of the fact that the Will Dews mentioned in the contract had been killed in March, 1906, without fault of the defendant. Upon demurrer by the plaintiff, this paragraph of the answer was stricken. The defendant then offered to amend his answer, and proposed two additional paragraphs thereto; and exception is taken to the refusal of the court to allow that part of the proposed amendment in which the defendant attempted to set up that the contract was the result of fraud practiced on him by the plaintiff. The amendment disallowed was as follows: "It was understood and agreed by and between plaintiff and defendant, at the time of the making of said alleged contract attached to the petition in said case, that defendant was not to pay plaintiff any amount over and above said $112 actually paid plaintiff by defendant, if the same Dews should either die or leave the service of defendant prior to January 1st, 1907, and further, if said Dews should remain with defendant until January 1st, 1907, and should not be indicted by said grand jury in Alabama, or, if indicted, said plaintiff should secure a nolle prosequi of said indictment, then defendant was to have the right and option of either returning said Dews to plaintiff, or of paying the plaintiff further money, and retain said Dews in his service. The foregoing stipulations and provisions were a part of said contract, and should have been engrafted therein, but were omitted by

the fraud of plaintiff and the misrepresentations of plaintiff to defendant, in this, to wit: At the time of the execution of said contract, plaintiff represented to defendant he was sick and suffering intensely with sick headache, and was greatly pressed for time to catch a train for his home, and plaintiff represented to defendant that said contract was so worded and framed as to embody said stipulations above set forth, and so as to protect defendant against said contingencies, and give him the said option. and plaintiff being an attorney at law, and defendant presuming that he knew how to prepare contracts, defendant, relying on the representations of plaintiff that said contract protected defendant as aforesaid, signed said contract. On account of the pressure on defendant at the time, brought on by what plaintiff represented was his condition, to wit, suffering with sick headache, and being pressed for time to catch said train, defendant did not have time to submit said contract to an attorney at law, or person capable of construing same, and hurriedly signed said contract, relying solely on said representations of plaintiff. as aforesaid."

Upon the trial the contract was introduced in evidence, and it was shown that the eight notes specified in it had been duly transferred by the plaintiff to the defendant and tendered to him. It was also shown that no indictment had ever been returned against Will Dews by the grand jury of Clay county, Alabama. The only testimony in behalf of the defendant was, that Will Dews, mentioned in the contract, had been killed by one Bowen in the early part of March, 1906, without the fault of the defendant, and that he was present when Riddle dictated the contract to a stenographer, and that he signed the same after it was written out. The court ruled out the evidence of the killing of Dews, and exception is taken to this ruling.

*W. L. Stallings, W. C. Wright,* for plaintiff in error.

*A. H. Freeman,* contra.

RUSSELL, J. (After stating the foregoing facts.)

We think the court properly overruled the demurrer to the petition. The petition fully and specifically set forth a cause of action against the defendant, upon the contract attached as part of the petition; and the special contention raised, that the contract is unenforceable because it is contrary to public policy, and void, because in violation of the constitution, is without merit. We

think the court, upon consideration of the demurrer, properly construed the contract. Not only is the construction which will uphold a contract as a whole and in every part to be preferred (*Fletcher* v. *Young*, 69 *Ga.* 591), but if there be doubt as to whether the purpose the contract seeks to effectuate is legal or illegal, the contract will be construed as made for a legal, rather than an illegal purpose. *Virginia Bridge & Iron Co.* v. *Crafts*, 2 *Ga. App.* 126 (58 S. E. 322). We do not think that the contract evidences an agreement to do an illegal act, or that it could be thus construed. It is true it is stated in the contract, that Potts is desirous of securing the services of one Will Dews, and that the plaintiff, Riddle, is on Dews' bond for his appearance to answer a charge of murder, and that Dews is indebted to Riddle on seventeen monthly notes for $16 each, aggregating $272, and that, to pay these notes, Dews agrees to work with Riddle or at his direction until this indebtedness (presumably for attorney's fees) is paid. But all of these things are stated merely as matters of inducement, leading up to the contract, which, when analyzed, is nothing more than an agreement on the part of Potts to purchase fifteen of the notes Dews had given Riddle, aggregating $240, for the sum of $225, $112 of which was to be paid in cash and $113 of which was to be paid the first of January, 1907. In other words, Potts gave Riddle $112, their face value, for the first seven notes, and agreed to give him $113 for $128 worth of the remaining notes, if, on the first day of January, 1907, the grand jury of Clay county, Alabama, had failed to indict Dews, or if the indictment, if one was found, was nol. prossed. The fact that, by the indictment, Dews should be deprived of the opportunity of paying the notes to Potts by his labor is the only thing mentioned which is to release Potts from the obligation of accepting the eight remaining notes and paying Riddle $113 therefor.

The view of counsel for plaintiff in error is that it is very plain, from the reading of the contract, that Riddle was hiring Dews to Potts to labor for him in involuntary servitude. Whether this was the nature of the service or not, the contract disputes it; for it says that Dews (who, from having executed these notes, may be presumed to be of full age) *agrees* to work with Riddle or at his direction. The statement that Dews *agrees* does not carry with it the idea that he was forced or compelled. It is true that the con-

tract would be valueless to enforce this agreement; because it was
not signed by Dews. But, considering the statement as a history
of the alleged transaction between Riddle and Dews, and construing
the language by the rules we have above referred to, it is to be
inferred that Dews' agreement was legally obtained, and was not
the result of compulsion. One may agree to pay a debt in work as
well as in any other way; and damages resulting from the breach
of such a contract may be recovered. The mere fact that Potts
agreed to deliver Dews to Riddle by the first day of January, 1907,
in case that he was indicted for murder in Alabama, does not
necessarily imply that Dews was in a condition of peonage if he
worked with Potts; because the contract is to be given a legal,
rather than an illegal construction, and the language used is con-
sistent with the idea that, although Dews may not have paid the
notes which the contract said he agreed to pay, Potts binds himself,
in effect, not to offer any obstruction to Dews' presence at his
trial, and is equivalent, on Potts' part, to an agreement to protect
Riddle as surety on Dews' bail bond. Construed as a whole, the
contract means, that Dews owes Riddle a debt that he is perfectly
willing to pay in work, it matters not for whom, provided the
debt is extinguished; that Potts wants work done, and is willing
to buy the debt evidenced by the notes, taking his risk as to
whether Dews will work it out with him or not, and with the un-
derstanding that he will not get the work unless it is agreeable
with Dews, as Riddle declares it to be. Certainly, there·is nothing
in the contract to indicate that Dews would have to work with
Potts, or would be forced to work with Potts, or that Riddle binds
himself to force Dews to work with Potts, contrary to Dews' own
free will. Riddle says, by the representations in the contract,
that Dews is willing and agrees to work at and according to his
direction. But while, as stated above, the contract was ineffectual
to bind Dews to work for Potts (because he was not a party to it),
it certainly does not show that it was contemplated by the parties
that he should be *made* to serve Potts contrary to his wishes. The
fact that Dews was willing to work, and that Potts wanted work
done, may be considered as being the reason why the contract was
made; and the fact that Dews might be taken away and carried to
Alabama for trial the first of January, 1907, and might be con-
victed of murder or some other offense, and thereby be unable to

carry out his agreement to work for Potts, may afford the reason. why Potts was willing to pay cash for the first seven notes, and also supply a reason why he only conditionally agreed to buy the remaining eight notes; but the core of the contract is purchase. and sale of the fifteen notes. Upon these notes, if they were not paid by Dews in work, Potts might either recover a judgment for the amount due, or a judgment for damages against Dews for failure to comply with his contract to pay the notes in labor, if Dews so contracted. The facts of this case, as evidenced by the contract, do not materially differ from those of *Dorsey* v. *Redwine,.* 1 *Ga. App.* 627 (57 S. E. 1073), in which we upheld the collection of a note given for money advanced to pay a fine. The notes. in the present case were given for professional services. See, also,. citations in that case.

2. The 6th paragraph of the defendant's plea, which paragraph was stricken by the court, averred that "the consideration of said alleged contract totally and absolutely failed, for the reason that on or about the—day of March, 1906, the said Dews departed this life." This paragraph was properly stricken; because it was. entirely immaterial, under our view of the contract, whether Dews. lived until January, 1907, or not. Nothing is contained in the con-- tract which can be construed as a stipulation by which Riddle insured Dews' life. The contract recited that, as an inducement to Potts to buy the notes, Dews had agreed to work for Potts, or for any one else as Riddle might direct. But the death of Dews could. not work a failure of consideration; because the consideration must fail as to the time of the contract, and subsequent failure. would afford no defense. 9 Cyc. 371; *Dowdy* v. *McLellan,* 52 *Ga..* 408. In the *McLellan* case the Supreme Court held that the fact that a note was given for slaves who were made free by the result of war was no defense to a suit brought upon the note. In the absence of an express stipulation to that effect, Riddle was not liable for the act of Providence. This stipulation might have been. incorporated in the contract, and provision made for an abatement of the purchase-price of the promissory notes in case that Dews died before he had an opportunity of paying the notes. But as. Potts did not see proper to have this provision incorporated, he created a risk as to himself, the consequence of which he is bound to assume, because he might have provided against it in the con-

tract. 9 Cyc. 628. The plea was properly stricken also, we think, for the reason that it sought to engraft upon the contract, as one of its conditions, a parol agreement as to a consideration different from the consideration expressed in the contract. *Hawkins* v. *Collier*, 101 *Ga.* 147 (28 S. E. 632).

3. There was no error in refusing to allow the amendment, offered by the defendant, which is set out in the statement of facts. The amendment which was refused undertook to set up that the contract was procured by the fraud of the defendant, and was therefore void. Not only are the allegations of fraud indefinite, vague, and speculative, but the amendment does not allege that Potts did not know the true terms of the contract at the time that he signed it, or even aver that he was in fact defrauded. See *Manry* v. *Waxelbaum*, 108 *Ga.* 16 (33 S. E. 701). In *Branan* v. *Warfield*, 3 *Ga. App.* 586 (60 S. E. 325), we held that, as to one who had an opportunity to read a contract, an allegation that it was signed by him without reading it was fatally defective, in the absence of an allegation that the signer could not read; because no man can be defrauded when he does not know whether the paper he signs does or does not contain the real contract, when it is his duty to know, and when, by the exercise of ordinary care, he can know the contents of the writing. In the present instance the plaintiff in error not only does not allege, in his proposed amendment, that he could not read, but does not allege that he did not read the contract he signed. He merely alleges that he did not have time to get an attorney. He does not allege that he did not know its contents. Construing the amendment, as we must, most strongly against the defendant, in the absence of the allegation of the want of knowledge of the true terms of the contract, the presumption is that he did know the terms of the writing before he actually signed it. If he knew its contents before he signed it, it was immaterial that the plaintiff might have induced him to sign it by saying that he was sick and in a hurry to catch a train. The rulings of the Supreme Court, in apparently similar cases of alleged urgency, went upon the theory that the pretended urgent haste of the proposer of the contract defrauded the signer, because (influenced by the artifice of the proposer of the contract) the opposite party did not have time to read the contract, and, for this reason, as a matter of fact, did not read it. The presumption arising from

the amendment in the present case is that Potts read it. No doubt the amendment could not be put in any stronger form than it was proposed, because it later appeared from Potts' testimony that he heard the contract dictated, and signed it as written out by the stenographer. In the absence of an allegation negativing knowledge of the actual terms of the contract, it is to be presumed that Potts knew its real terms. If he did, the fact that he did not have time to get an attorney would make no difference. *Reynolds & Hamby Co.* v. *Martin,* 116 *Ga.* 495 (42 S. E. 796); *Rounsaville* v. *Leonard Mfg. Co.,* 127 *Ga.* 735 (56 S. E. 1030); *Bostwick* v. *Duncan,* 60 *Ga.* 384; *Carroll* v. *Hutchinson,* 2 *Ga. App.* 60 (58 S. E. 309).

4. No other verdict could have been reached by the jury; and, therefore, the error in directing a verdict for the plaintiff was harmless.                                   *Judgment affirmed.*