## BASCH v. FRANKENSTEIN et al.

The court committed no error in sustaining the demurrer and dismissing the equitable petition, on the ground that it undertook to set up a stale demand.

MAY 11, 1910.

Equitable petition. Before Judge Charlton. Chatham superior court. January 26, 1909.

The plaintiff prayed for injunction, reformation of a deed, a decree that she have and receive an undivided one-half interest in the land described in the petition, an accounting for rents, and other equitable relief. To the petition the defendants filed a demurrer on the following grounds: "1. No cause for relief of any kind is set forth in the petition. 2. It appears by the allegations of the petition that petitioner is not entitled to the remedies sought for or any of them. 3. The claim set up by petitioner is barred, and is also a stale demand, and it appears by the petition

that petitioner has been guilty of such delay and laches as will prevent any recovery by petitioner." To the order of the court sustaining the demurrer the plaintiff excepted. The presiding judge, in his opinion appearing in the record, succinctly set forth all the material allegations of the petition, and gave his reasons for sustaining the demurrer. A copy of his opinion is as follows:

"The petitioner's grandfather, Elias Barnett, in 1872 gave to her and her sister, Julia Barnett, and to the survivor of them, the sum of two thousand dollars.. They were minors at the time, and the money was paid by the grandfather to their father, Wolfe Barnett, for the benefit of said minors, or the survivor of them. At some time presumably in 1872, Wolfe Barnett invested the money in the purchase of an undivided one-half interest in a plantation in Bryan county, buying it for the use of the minors or the survivor, but for purposes of the said Wolfe Barnett and one Julius Levkoy, each knowing the interest of the minors in the purchase-money, the deed was made to Levkoy, he holding the one-half interest in the land in trust for petitioner, the other half being his own. On August 7th, 1879, Levkoy conveyed an undivided half interest in the plantation to Leah Frankenstein, the mother of defendants, she fully knowing and understanding that such interest belonged to the petitioner (who was then the survivor of the minors), and the said Leah taking the same in trust, although the deed did not express or describe the trust. About the same time Levkoy transferred his half interest to Jane H. Ellis, who in turn conveyed to W. C. Jackson. Subsequent to this, Wolfe Barnett purchased the Levkoy half interest from Jackson for Marcus I. Frankenstein, the deed being made to Leah Frankenstein on a consideration of two thousand dollars, who in turn conveyed it to Marcus I. Neither Levkoy nor his heirs have any claim to the property, nor have they claimed any since August 7th, 1879. The defendants are adult heirs at law of Leah Frankenstein, and at all times had knowledge of the alleged trust—that is to say, that whilst their mother was nominally the owner of said undivided half interest, [she] was really and in truth holding the same as trustee for the sole use and benefit of the petitioner, who, on August 7th, 1879, was and has been since the owner. Wolfe Barnett had great confidence in his sister Leah, and had the title put in her name because at the time he was in financial difficulties and feared the interpo-

sition of creditors, even if he appeared as trustee.    He used his sister's name in various operations concerning the land, causing her to sign notes and do other things about the management of the property; and she never denied that she had no interest in the land nor that she was holding the title for the benefit of petitioner. Leah Frankenstein died January 30, 1901, admitting up to the time of her death the interest of petitioner and her own want of interest in the land.    Since her death the defendants as her heirs have claimed adversely to petitioner, asserting that they are the owners of the interest and refusing to recognize the petitioner as owner.    All the matters concerning the land were conducted by Wolfe Barnett, and he never told .petitioner what her rights in the land were, nor did she know anything concerning the title thereof and how it had been arranged and held nor concerning her rights in the premises until December 19th, 1907, when she learned the facts from Wolfe Barnett and immediately asserted her claim, filing this action, as a consequence, on May 9, 1908.    The petitioner prays decree that Leah Frankenstein, in her lifetime, held the interest as the trustee—petitioner being the true owner, and that the deed from Levkoy be reformed; a division of the entire holding in kind or by sale; injunctive relief against waste, and an accounting for rents and profits.    This is the case as presented by the petitioner.    Between the deed to Levkoy and the filing of this action thirty-six years have intervened.    When the petitioner became of age does not appear.    But if when the money was handed her father by her grandfather she was only a day old, fifteen years have elapsed since the attainment of her majority.    Manifestly, a strong case must be presented in order to keep a cause in court which is burdened with all these years.    There is no conspiracy charged; no fraud, no agreed effort to suppress information.    Many people are declared to have known the true history of the transaction.    The grandfather knew it; the father knew it; Levkoy knew it; the aunt knew it; the defendants knew it.    For all that appears to the contrary, the other cestui que trust knew it.    The sole person who during all these years did not know seems to have been the petitioner.    There is no declared object of keeping the knowledge from her.    The father's object appears to have been to keep the information from his creditors.    He is not a defendant here; no fraud is imputed to him; no design to conceal; no pres-

cut insolvency; no reason why, if he has violated a trust, he is not abundantly able to respond. Whilst it is stated that Leah Frankenstein was only the nominal owner, it only inferentially appears that she did not pay the consideration money named in the deed. For over seven years the defendants have been claiming the property adversely to petitioner. No facts are alleged to account for the failure of the petitioner to know, nor is any diligence on her part declared. She does state that 'all matters concerning said land have been conducted by the said Wolfe Barnett, and he never told this petitioner what her rights in the land were, nor did she know anything concerning the title thereof and how it had been arranged and held, nor concerning her rights in the premises.' Non constat but she knew of the gift of the money, and knowing that, it would seem reasonable to assume that with a fact so extensively known by those who are not charged with fraud or even the effort to conceal, so far as petitioner was concerned, the slightest diligence would have disclosed years ago what was voluntarily told on December 19th, 1907. On the contrary, taking, as I am bound to do, the strictest line of construction against the pleader, it would appear that no one so much as undertook to conceal the alleged truth. There is no claim that Elias Barnett did not make it known, and it is distinctly averred that during her lifetime, from August 7th, 1879, to January 30th, 1901, a period of nearly twenty-one years, Leah Frankenstein 'admitted that she . . had no interest in said land, but that your petitioner owned an undivided one half interest therein.' There was about the transaction, save so far as the creditors of Barnett were concerned, apparently no secrecy. At all events, no facts are pleaded, as would seem requisite from the decisions, which explain why diligence on the part of the petitioner would not have disclosed the main fact long ago. This seems to have been a family affair, and to that extent the rule of law would allow some elasticity in the requirement of diligence. On the other hand, certainly one important witness, Leah Frankenstein, has died, and possibly others; and this tightens the rule again. I sustain the demurrer without going into the other very interesting subjects suggested by the arguments and the investigation. The initial step involved a parol trust concerning personalty. The trust in land, whilst expressed so far as words can make it, is not in writing. Resultant or not, as it may have

been at some stage, these particular defendants, save in so far as they may be affected by the attitude of their mother, have neither by writing nor words expressed any trust. They have denied it in asserting their own ownership. The responsible party under these circumstances seems to me to be Wolfe Barnett. Let an order be presented sustaining the demurrer."

*Garrard & Meldrim* and *Osborne & Lawrence,* for plaintiff.

*Adams & Adams,* for defendants.

HOLDEN, J. (After stating the foregoing facts.) We think the court committed no error in dismissing the petition on the demurrer thereto. The able opinion rendered by the presiding judge, Hon. Walter G. Charlton, hereinbefore copied, clearly and forcibly sets forth sound reasons why the plaintiff should not be permitted to maintain this action. As therein pointed out, it is not shown from the petition that the plaintiff has not at all times known that her grandfather gave the $2,000 to her father for the benefit of herself and her sister. If she knew this in 1872, no excuse is offered why she did not from that time until the death of her aunt, Leah Frankenstein, in 1901, inquire what disposition was made of the money; and it would seem that if inquiry had been made, the truth as to the investment of his money in 1879 would have been given her, as no fraudulent intent on the part of any of the parties is charged. The only statement the plaintiff makes about her age is that she was a minor in 1872. It is impossible to tell what time elapsed after she became of age, until she filed suit in 1908. The time which thus elapsed could not have been less than 15 years, and, as far as we know from the petition, may have been 36 years. While it does not appear when the plaintiff became of age, it does appear she had reached her majority when the mother of the defendants died on the 30th day of January, 1901, and defendants thereafter held the land adversely to the plaintiff for more than seven years before she filed suit. The laches of the plaintiff bars her of any right to the relief sought. Civil Code, §§ 3939, 3775. And see, in this connection, *Baker* v. *Baker,* 134 *Ga.* 138 (67 S. E. 541); *Reynolds* v. *Martin,* 116 *Ga.* 495, 502 (42 S. E. 796).

*Judgment affirmed. All the Justices concur.*