TICHENOR, receiver, *v.* WILLIAMS BLOCK PAVEMENT CO.

A court of equity will not authorize or direct the receiver of a business corpo-
ration to sue for and collect unpaid stock subscriptions, when it appears that
there is no existing creditor who has an unsatisfied debt against the corpo-
ration, and that the only purpose for which such authority is sought is to pro-
vide a fund for meeting obligations, on the part of the corporation, which it
is altogether probable will arise in the future and at a time when the corpo-
ration will have no solvent stockholder.

Argued June 28, — Decided August 9, 1902.

Petition.  Before Judge Lumpkin.  Fulton superior court.  Jan-
uary 7, 1902.

*Burton Smith* and *George Gordon*, for plaintiff.
*Wharton O. Wilson*, for defendant.

LITTLE, J.  On the petition of the American Bonding and Trust
Company of Baltimore City, the assets of a private corporation us-
ing the name of the Williams Block Pavement Company were placed
in the hands of Tichenor, as permanent receiver, and all persons
were enjoined from interfering with him in his control of the assets
of that company.  The petition on which the receiver was appointed
alleged, that in the fall of 1897 the defendant company paved
North avenue from Peachtree to West Peachtree street, and from
West Peachtree to Williams street, with wooden blocks; that this
work was done for the City of Atlanta, under certain contracts made

with the city; that the defendant company was required to give bond with security for the execution of said contracts; that petitioner executed for the defendant two bonds, one for $5,000, and one for $3,000, to secure the execution of said contracts; that the defendant company proceeded under said contracts, which when completed were accepted by the City of Atlanta; that under the terms of these contracts the pavements were to be kept in good condition for ten years; that about three years have elapsed since the work was completed, and the pavement is rapidly getting in bad condition, and is now in need of improvements in the way of a coat of tar or some substance to be put on the wooden blocks, and unless this is done the pavement laid by the defendant company will rapidly rot; that if these blocks should now receive proper attention, a comparatively small amount of money would put them in a satisfactory condition, but if the pavements are allowed to remain in the present condition they will rapidly deteriorate, and in a short time will require many thousand dollars to put them in repair; that the City of Atlanta, through its proper officer, has notified both the defendant company and petitioner that immediate steps must be taken to put these pavements in condition, and petitioner has urged the defendant company to do so, but it has done nothing, and is making no effort to do anything; that the company has gone out of business, has no office, and its officers manifest indifference as to the result; that it did not make a business success; that it was understood, at the time the bonds were executed, that it had a capital stock of $25,000, and that ten per cent. of this had been paid in; that, notwithstanding repeated demands on the part of petitioner, the officers and stockholders of defendant have taken no action, but refuse to do anything; that only three of the stockholders are solvent, and one of these claims that he never was a stockholder, and only one of those who is solvent admits that he is a stockholder, and his assets are decreasing rapidly; that the only opportunity to collect any money from defendant will be through a receiver and a suit by him against the stockholders; that the amounts for which petitioner would be liable on the bonds which it executed are increasing with great rapidity, that petitioner has been unable to find the stockholders' book or any other book of the defendant company, and its officers say they know nothing of the books, records, and papers of defendant.

Under these allegations, and in response to proper prayers, a receiver was appointed by consent of the parties, after the City of Atlanta had intervened and been made a party plaintiff in the case. Subsequently Tichenor, the receiver, filed, in the superior court of Fulton county, a petition in which he alleged that, in his opinion (for reasons set out in the petition under which the receiver was appointed), it was necessary to call in all of the unpaid stock subscriptions in order to discharge final obligations and carry out its contracts. Therefore he prayed : first, for an order authorizing and directing him to make a call on each subscriber for the immediate payment of his unpaid subscription, to wit, 90 per cent.; second, that he be authorized to sue such subscribers as fail to comply with such call. A rule nisi was issued and served, and subsequently the receiver amended his petition and alleged that it would require from $8,000 to $10,000 to keep the pavement in repair during the contract; that the company had failed to keep the same in repair, and there was a present demand by the city on the company for repairs to the extent of $1,000, and defendant company has less than $500 assets except its stock subscriptions; that most of the stockholders are insolvent, and the only solvent stockholder who admits himself to be such is wasting his assets, and will in a few years be insolvent; and that the repairs will continue to be necessary during some years. At the hearing the defendant company demurred to the petition as amended, on the grounds, that no liquidated debts due by the defendant company are shown by the petition, for the payment of which the receiver would be authorized to sue and collect unpaid stock subscriptions ; that the amount sought to be collected by the receiver was largely in excess of any liability due by the defendant, as shown by the petition; that no liability is shown to have been incurred by the American Bonding & Trust Company which the receiver would be authorized to pay should he collect the subscriptions as prayed for; and that the petition for receiver was in effect one simply to collect and hold funds in contemplation of a debt which might arise in the future.

The judge denied the prayer, sustained the demurrer, and dismissed the petition. To these rulings the receiver excepted.

The question thus arises whether the trial judge erred in refusing to grant the prayers of the receiver. We do not think he did. It does not appear that the Pavement Company was a debtor either

to the Bonding and Trust Company or to any other person or corporation. It is true the pleadings show that the Pavement Company is practically out of business; that its assets are small; and that in all probability it would be both unwilling and unable to comply with the contracts which it had entered into with the City of Atlanta, and by its failure so to comply the American Bonding and Trust Company would at sometime in the future, sooner or later, suffer loss. We do not understand that the subscribers to the capital stock of a corporation are liable for their unpaid subscriptions to any persons except, 1st, the corporation in which the shares are held, and 2nd, the creditors of such corporation; and, as we understand the rule, no recovery can be had against them by the latter, unless two things are made to appear: first, that the corporation is insolvent; and second, the existence of a debt or debts due by the corporation, which the collection of such subscriptions is intended to liquidate. Mr. Elliott in his treatise on Private Corporations, § 571, declares that "the right to proceed against a stockholder is dependent upon the existence of a debt due from the corporation to its creditors." Mr. Beach in the first volume of his work on Private Corporations, § 115, declares, on authority, that "at common law the stockholders in a corporation are not liable individually for the corporate debts." In section 123 of this same work he says: "The personal liability of stockholders for the debts of the company is secondary to that of the company itself, and does not accrue until the corporate assets have been exhausted or clearly shown to be insufficient to meet the demands of creditors," in support of which he cites many cases in note 3, p. 233. In their treatise on Private Corporations, volume 3, p. 2428, Clark and Marshall state the rule thus: "Any balance that may be due from the stockholders of a corporation on their stock constitutes a part of the assets of the corporation, and, on the dissolution or insolvency of the corporation, its creditors, having exhausted their legal remedies against the corporation, may sue in equity to compel the stockholders to pay in the same, and have it applied to the satisfaction of their claims." Mr. Cook in his treatise on Stock and Stockholders, vol. 1, § 200, after declaring that while it is settled law in the United States that unpaid subscriptions constitute a trust fund for the benefit of corporate creditors, and that such unpaid balances are not the primary or regular fund for the pay-

ment of corporate debts, also says: "When the corporation is in default and embarrassed, or for any reason fails to pay its debts, then its creditors have rights with reference to such unpaid subscriptions. They then have the right to know whether all the subscriptions for stock have been fully paid in, and, if not, the right to compel such payment." He then declares that "the well-established rule upon this point is, that a corporate creditor's suit to enforce payment of unpaid subscriptions can be properly brought only after a judgment at law has been obtained against the corporation, and an execution returned unsatisfied." The same author further on states certain exceptions to this rule, which it is not here important to consider, as the facts alleged do not bring the petitioner in this case within any of these exceptions.

Following these rules, which appear to be generally recognized, it is ruled in Wetherbee v. Baker, 35 N. J. Eq. 501, that "a creditor, having exhausted his remedy against the corporation by judgment, execution, and a return of nulla bona, may file a bill against stockholders to compel the payment of unpaid subscriptions to the capital stock." We have referred to these authorities for the purpose of showing the necessity of having an existing debt against the insolvent or embarrassed corporation before a creditor can maintain a suit against an individual stockholder to recover the amount of his unpaid subscription. In the case of Wing v. Slater (R. I.), 33 L. R. A. 566, a very full discussion is had as to the nature of the debt, to be shown in order to authorize such a suit. In the case of *King* v. *Sullivan*, 93 *Ga.* 626, following the general rule, it was declared to be well settled that unpaid stock subscriptions are assets of an insolvent corporation which, when properly reached, may be applied to the benefit of its creditors. The facts of the present case show that neither the City of Atlanta nor the Bonding Company is a creditor of the defendant corporation. No present debt is shown or even alleged to be owing to either of these corporations by the defendant company; and giving the allegations of the receiver's petition the full weight they are intended to have, it only appears that the Pavement Company will at some time in the future, if it has not already done so, probably make a breach of its contract with the City of Atlanta, and it will, after the surety has settled for the damages caused by the breach, then owe the Bonding Company

such an amount as it would have to pay in consequence of the breach. It was the evident purpose of the receiver, had he been permitted to call in the unpaid stock subscriptions, to hold the same, and from time to time apply the fund to the proper execution of the contract between the city and the pavement company according to its terms. Such a course would, as we understand it, extend the rule of the liability of the stockholders further than, as we are informed, it has ever been carried.

In the case of *Guilmartin* v. *Railway Company*, 101 *Ga.* 565, it was ruled that " When a guarantee has taken from the guarantor no assurance of the guaranty by mortgage or otherwise, so as to create a lien in his favor upon the property of the latter, the mere existence of the contract of guaranty presents no obstacle, legal or equitable, to such disposition of his property as the guarantor may deem proper; and the fact that a guarantor may become insolvent. or may waste his goods before there is a breach of the contract. upon the part of the principal and before such time as the guarantor shall have become answerable upon his undertaking, affords no reason for the intervention of a court of equity, nor any reason for the grant of an injunction or the appointment of a receiver to seize and hold the guarantor's estate. The assets of a corporation which has contracted as a guarantor are not liable to seizure, either at law or in equity, until after a breach by the principal of the guaranteed agreement; and neither the conveyance of its assets to third persons nor the misappropriation of its funds by its stockholders affords any ground for equitable interference at the suit of the guarantee, when it does not appear either that the principal is insolvent or that there has been any breach by him of the contract which was guaranteed. The mere possibility of a future breach of such contract, with a resulting liability against it as a guarantor, will not authorize the appointment of a receiver to take its assets out of the hands of its stockholders." Our present Chief Justice, who delivered the opinion in that case, said, in conclusion, that. "Equity will not impound the property of a guarantor for thirty years, especially where other creditors have claims against him, in order to ascertain at the end of that time whether the principal will. be able to meet the obligation against him, which is the subject of the guaranty." We must therefore rule, both under the authorities generally and the spirit of our own decisions, that the court.

committed no error in sustaining the demurrer and dismissing the petition of the receiver.

*Judgment affirmed. All the Justices concurring, except Lewis, J., absent.*