## COMMERCIAL BANK OF AUGUSTA *v.* WARTHEN.

1. One extending credit to a corporation can not complain of acts of mismanagement on the part of officers and agents of the corporation prior to the time when the credit was extended.
2. While unpaid stock subscriptions are assets of an insolvent corporation for the benefit of its creditors, of which a court of equity will, by proper proceeding in personam, compel payment when the corporation fails or refuses to call for or collect the same, the corporation is a necessary party to such a proceeding.
3. The right of action in a corporation against a defaulting stock subscriber for unpaid subscriptions is a right of action arising upon contract, and, on the adjudication of the corporation as a bankrupt, passes to the trustee under the bankrupt act of 1898, sec. 70 *e*. The foregoing is true although the subscriber claims that the subscription has been paid in full, and the corporation is contesting that issue with him.

Argued April 4, — Decided May 11, 1904.

Equitable petition. Before Judge Gary. Richmond superior court. June 29, 1903.

*W. H. Fleming*, for plaintiff. *E. H. Callaway*, for defendant.

SIMMONS, C. J. On October 1, 1901, the Commercial Bank of Augusta, brought suit against W. B. Lamkin and Thomas Warthen, alleging in its petition substantially as follows: In September, 1898, defendants formed a partnership, under the name of W. B. Lamkin & Company, for the conduct of the retail grocery business. The capital stock was $5,000, which was furnished by Warthen. After conducting business for a short time as a partnership, Lamkin and Warthen applied for a charter to carry on the business as a corporation under the name of the W. B. Lamkin Company, which charter was granted on November 22, 1898. The capital stock was to be $5,000, of which ten per cent. was alleged to have been paid in. At the time of the granting of the charter the stock and other assets of the firm were not worth $5,000, having been diminished by sales at least $2,500; the proceeds having been used in payment of goods bought by the firm. Ten per cent. of the capital stock had not been paid in, as alleged in the petition for incorporation, nor was it thereafter paid in. After the charter was granted defendants held no meeting, and opened no books of subscription; no subscriptions were made by either of the defendants, the charter was never accepted; no rules, regulations, or by-laws were adopted;

no subscriptions to capital stock were made, and nothing was paid on account of capital stock. It was agreed between Lamkin and Warthen that Lamkin was to have one share of stock and Warthen forty-nine, and that Lamkin was to be president and manager and Warthen vice-president. Various acts of mismanagement are alleged, some of which occurred before the plaintiff became a creditor of the corporation, as hereinafter stated, it not appearing when the others took place. In June, 1899, the store and merchandise of the company were destroyed by fire, and after the collection of the insurance money there was in hand about $8,250 in cash. It is alleged that a portion of this sum was misappropriated by the joint action of the defendants. After the fire the business was continued in the same negligent manner as before. On May 16, 1901, the corporation was adjudged an involuntary bankrupt. The trustee, upon taking possession of the effects of the corporation, found it wholly insolvent. The debts were placed at $4,786.55, and assets at $7,500, but were actually sold for only $1,686.83. It is alleged that the losses, insolvency, and bankruptcy were due to the misconduct of the defendants and their negligent management of the business, and their failure to perform the duties which were required of them by law. It is alleged that defendants are jointly liable for the sum of $2,000 unlawfully diverted from the assets of the corporation, and for $3,600 drawn out as salary without any vote or corporate action authorizing the same. Defendants were in reality directors of the corporation and trustees for the creditors, and liable for the sums lost through their misconduct and mismanagement. In April, 1901, when the corporation was actually insolvent, and when its assets were worth less than $2,000, petitioner loaned to it the sum of $1,400, though petitioner was not aware of its condition until after the bankruptcy proceedings, nor until that time did it know of the acts of misconduct and mismanagement above referred to. The loan was made on the faith of statements that Lamkin was solvent and owned property worth $5,000. The money loaned was used by the corporation in its business. Petitioner has proved its claim for $1,400 in the bankrupt court. The prayers are, (1) that defendants be made to account for all sums due by them by reason of the facts alleged; (2) that they be required to replace and make good the $2,000 in cash withdrawn from the assets of

the corporation; (3) that they be required to make good all loss and waste occasioned by their negligence, misconduct, and failure to comply with their duty as officers and directors of the corporation; (4) for a judgment for $1,400, besides interest; (5) for general relief and process.    The application for a charter by the defendants and the order granting the same were exhibited with the petition.    Amendments were allowed, containing allegations with reference to misconduct and mismanagement on the part of the defendants, averring that no part of the capital stock of $5,000 was ever subscribed, that the net worth of the partnership stock, which was used as a basis of operation for the corporation, was only $1,500, and praying for a judgment against the defendants for the whole of the capital stock, to wit $5,000, or for a judgment for the difference between that amount and the true value of the assets of the partnership which went into the business of the corporation.    Warthen filed a demurrer, setting up that the petition alleges no cause of action; that there is no equity in the petition; there is a misjoinder of causes of action and of parties defendant, as well as nonjoinder of defendants; and that plaintiff, having proved its debt in bankruptcy, has no right under the bankrupt act to maintain a separate suit for the collection of its indebtedness.    There were other grounds of demurrer, which need not be set forth.    The court sustained the demurrer and dismissed the petition.    The plaintiff excepted.

1. So far as the petition alleges mismanagement on the part of the defendants in their alleged capacity as officers and directors of the corporation and the withdrawal of assets, it sets forth no cause of action in behalf of the plaintiff.    It distinctly appears that the $2,000 alleged to have been withdrawn was so withdrawn before the plaintiff extended credit; and while there is no distinct allegation that the $3,600 was withdrawn before that time, or that the other acts of mismanagement alleged took place before, it appears inferentially that such is the case, for the petition avers that in April, 1901, when the loan was made, the assets were worth less than $2,000.    It was incumbent upon the plaintiff to show that the mismanagement of which it complains was at a time when it would result in injury to it.    While one extending credit to a corporation may properly complain of fraudulent statements made in reference to the affairs and condition of the cor-

poration at the time the credit is extended, he can not complain of mismanagement on the part of the officers of the corporation that took place prior to the time that the credit was extended. See, in this connection, Thomp. Liab. Off. & Agts. Corp. 460.

2. It is claimed that the petition is maintainable under the provisions of the Civil Code, § 1856, which declares that "persons who organize a company, and transact business in its name before the minimum capital stock has been subscribed for, are liable to creditors to make good the minimum capital stock with interest." But even treating the averments of the petition as being sufficient to set forth a liability under this section, is the suit maintainable unless the corporation is a party ?    This does not seem to be an open question in this court.    See *King* v. *Sullivan*, 93 *Ga.* 621. It is to be noted that in the case of *Burns* v. *Hardware Co.*, 83 *Ga.* 471, from which section 1856 was codified, while no question of parties was raised, the corporation was made a party to the case.    See also, in this connection, *Wilkinson* v. *Bertock*, 111 *Ga.* 193; *Morgan* v. *Gibian*, 115 *Ga.* 145; *Tichenor* v. *Williams Paving Co.*, 116 *Ga.* 307.  In *Moore* v. *Ripley*, 106 *Ga.* 556, the suit was by the receiver of a corporation, which was in law a suit by the corporation.    In a proceeding against the corporation a receiver had been appointed, and this receiver, under an order of the court, was proceeding to sue the stockholders for their unpaid subscriptions.

3. There is, however, an additional reason why the judgment sustaining the demurrer was right.    Upon the adjudication in bankruptcy, the right to bring a suit of the character under consideration vested in the trustee, and this alone was a sufficient reason for sustaining the demurrer and dismissing the petition. Under the bankrupt act of 1898 the trustee is vested, by operation of law, with the title of the bankrupt as of the date he was adjudged a bankrupt, and with all "rights of action arising upon contracts or from the unlawful taking or detention of, or injury to, his property."    See sec. 70 *e*.    There are a number of cases, decided under the bankrupt act of 1867, which hold that the right to collect unpaid stock subscriptions passed to the assignee in bankruptcy.  See Payson *v.* Stoever, Fed. Cas. No. 10,863; Michener *v.* Payson, Fed. Cas. No. 9,524; Myers *v.* Seeley, Fed. Cas. No. 9,994; Lane *v.* Nickerson, 99 Ill. 284.    See also Sawyer *v.*

Hoag, 17 Wall. 610; Scovill *v.* Thayer, 105 U. S. 143. The case of Dutcher *v.* Marine Bank, Fed. Cas. No. 4,203, 12 Blatch. 435, is not in conflict with these decisions. It was simply held there that the right to enforce a constitutional or statutory liability on the part of stockholders for debts of the corporation to the amount of the stock held by them did not pass to the assignee in bankruptcy; and it was expressly stated in the opinion that the rule would be different as to unpaid subscriptions to stock, which were assets of the corporation and passed to the assignee. The same distinction is to be noted as to the case of Peohl *v.* Simpson, 50 How. Pr. 341. The provisions of the act of 1867 were, however, somewhat broader in their terms than those of the act of 1898. Our attention has been called to but one case under that act, which appears to be at all in point, that of In re Crystal Springs Bottling Company, 3 Am. B. R. 194, a decision by District Judge Wheeler of Vermont. In that case it was held that corporate stock subscriptions are a primary fund for the payment of corporate debts, but a call is necessary before such subscriptions can be collected, and that where the corporation has gone into bankruptcy the trustee is the proper one to make the call. It was further held that the court of bankruptcy has jurisdiction to order the call and to entertain a suit to enforce the payment. The liability of a stockholder upon his stock subscription depends upon the contract of subscription. There would seem to be no room for question that the right of the corporation to enforce the payment of subscriptions is one arising upon contract. Nor would it make any difference that the stockholder claims to have paid the subscription. The right of action remains the same, and the defense set up raises merely an issue of fact, which can be tried in the suit by the trustee on the contract as well as if the suit had been brought by the corporation. Even if the petition set forth a cause of action at all, it was subject to the objections that the corporation was not a party, and that the suit should have been brought by the trustee in bankruptcy.

*Judgment affirmed. All the Justices concur, except Lamar and Evans, JJ., disqualified.*