3249, 3250. ROSENHEIM SHOE CO. *v.* HORNE *et al.,* and *vice versa.*

1. The motion to dismiss the bill of exceptions, on the ground that it does not disclose with sufficient certainty who are the parties to it, is not well taken.

2. The liability which, under the Civil Code (1910), § 2220, attaches to the organizers of a corporation, for beginning to do business before the minimum capital stock is subscribed for, attaches in favor of creditors, and not in favor of the corporation itself. It is a liability which a trustee in bankruptcy of the corporation can not legally enforce; hence, the pendency of a suit by a trustee in bankruptcy on this alleged cause of action does not afford ground of abatement as to a suit filed by a creditor in his own behalf.

3. Prior to the formal and complete organization of a corporation, the organizers of it may make provisional contracts in behalf of the corporation, which may become binding on the corporation after it begins business; but in the meantime, and until the corporation is legally organized, the promoters are liable as partners. The law does not require that the minimum capital stock, as stated in the charter, shall be fully subscribed for until formal organization and till the corporation, as such, begins to do business. Hence, one dealing with the persons who have obtained a charter for a corporation, but who have not formally completed organization thereunder may, though he has knowledge, at the time he contracts, that the capital stock has not been subscribed for, hold the organizers liable as partners when they afterwards go forward and commence business as a corporation without requiring the capital stock to be subscribed; it not appearing that he knew that the persons with whom he dealt did not intend to obey the law in this respect.

4. Where the application for charter and the charter of the corporation name only one sum as the proposed capital of the corporation, that sum is the "minimum capital stock" which the Civil Code (1910), § 2220, requires to be subscribed for in order to relieve the organizers of the corporation from individual liability to creditors.

DECIDED JANUARY 15, 1912.    REHEARING DENIED FEBRUARY 27, 1912.

Complaint; from city court of Eastman—Judge Griffin. January 19, 1911.

The plaintiffs sold goods to the manager of a corporation in process of organization. The capital stock of the corporation was stated in the application for charter and in the charter itself as $20,000. The full capital stock was never subscribed or paid in; indeed, only 10 per cent.—that is, $2,000—was ever subscribed or paid in. The corporation became bankrupt without having paid the plaintiffs' bill in full. The trustee in bankruptcy and the plaintiff company each separately sued the promoters of the corporation to enforce the liability declared by the Civil Code (1910),

§ 2220, as follows: "Persons who organize a company and transact business in its name, before the minimum capital stock has been subscribed for, are liable to creditors to make good the minimum capital stock with interest." The suit by the trustee in bankruptcy is involved in the present case only to the extent that its pendency was set up by the defendants as a plea in abatement to the present action.

The facts of the transaction are practically undisputed. The principal reason asserted by the defendants why the plaintiffs should not hold them liable is that the plaintiffs knew, at the time they extended the credit, that the full capital stock had not been subscribed. The proof as to this element of the case comes from the plaintiffs' credit man. He testified, in substance, that when he passed on the order for the goods, he had before him reports from the commercial agencies stating that the corporation was in process of organization, that only $2,000 had been subscribed for and paid in at that time. He further stated in his testimony that he did not understand or believe that only this sum was to be subscribed for and paid in, and the commercial reports did not so state. His understanding was that the organization was not complete, that it would be completed by the full capital stock being subscribed, and that it would be paid in as needed. The court granted nonsuit on the ground that this knowledge as to the capital stock not being subscribed for prevented the plaintiffs from recovering. To this judgment, as well as to a number of other rulings, the plaintiffs excepted. The defendants filed a cross-bill of exceptions.

*Hardeman, Jones, Callaway & Johnston,* for plaintiffs.
*W. M. Clements, W. L. & Warren Grice,* for defendants.

POWELL, J. (After stating the foregoing facts.)

1. The defendants moved to dismiss the bill of exceptions because it does not definitely disclose who are parties to it. It recites that it is filed in a case of Joseph Rosenheim Shoe Company against certain persons and a corporation, naming them, and that to the final judgment the plaintiff excepts and tenders the bill of exceptions. These recitals are consistent with the record. The motion to dismiss is overruled. *Joiner* v. *Singletary,* 106 *Ga.* 257 (32 S. E. 90).

2. As to whether the present suit was subject to abatement because of the pendency of the prior suit instituted by the trustee in

bankruptcy of the corporation on the same alleged cause of action: The right of action declared by the Civil Code (1910), § 2220, is given to the creditors, and not to the corporation, or to any one standing as its representative or successor in title. In *Walters* v. *Porter,* 3 *Ga. App.* 73 (59 S. E. 452), this court allowed the receiver appointed in an equitable action against the corporation to maintain a similar action with the consent of and under the direction of the court of his appointment. That decision was based on the theory that the receiver, under all the circumstances of the case, not only was clothed with such right to sue as formerly resided in the corporation, but also represented the creditors and was authorized to sue in their behalf. It was on this second fact, the fact that he had been vested with the right of action normally residing in the creditors, and not the fact that he was also the representative of the corporation, that this court recognized the receiver's right to bring suit to enforce the liability against the promoters of the corporation. A trustee in bankruptcy, upon his appointment and qualification, succeeds (except in so far as it is otherwise specially provided) to the title to all property of the bankrupt, and becomes authorized to sue and recover, in most cases, where, but for the intervention of the bankruptcy proceedings, the bankrupt could have sued. Still, such title and such authority to sue as the trustee in bankruptcy possesses is only that conferred by the act of Congress. He is, in a sense, a representative of the creditors and of the bankrupt, but is a special, and not a general representative. The extent and limits of his title as to property and as to causes of action are prescribed in § 70 of the bankruptcy act. Neither this nor any other portion of the act transfers to him causes of action accruing personally to the creditors. It is true that by the amendment of June 25, 1910 (31 St. at Large, ch. 412), the trustee is vested with the same rights as if he were a judgment creditor; but this, as plainly appears from the context, is intended to apply only to cases in which the trustee is suing to recover assets belonging, in law or in equity, to the bankrupt estate, or is defending against the claims of others seeking to take the property from his possession. For unpaid stock subscriptions the corporation would, but for the bankruptcy, have a cause of action. *King* v. *Sullivan,* 93 *Ga.* 621 (20 S. E. 76). And to enforce that liability the trustee in bankruptcy may sue. *Commercial Bank* v. *Warthen,* 119 *Ga.* 990

(47 S. E. 536). If, instead of paying the subscriptions in cash, or in property at fair valuation, the stockholders go through the form of satisfying their obligations on their contracts of subscription by paying in property fraudulently overvalued, the law looks upon the subscriptions as still unpaid, and the trustee of the bankrupt corporation may sue to compel the delinquent stockholders to make good that of which the corporation has been deprived through the fraud. *Allen* v. *Grant,* 122 *Ga.* 552 (50 S. E. 494).

But the liability of the stockholders in each of the cases just mentioned is essentially different from the liability imposed by law upon the persons who undertake to organize a corporation and proceed to do business before the minimum capital stock is subscribed. When ·persons in this State apply for a charter for a corporation, and state what the capital stock of the corporation is to be, the expression "capital stock" means something. It means that the new creature of the law is to start out on its business career with assets of the amount stated. It means that those organizing the corporation, while desiring to exempt themselves from general individual liability for the liabilities that the corporation may incur, will see that it starts off in life endowed with this amount of money (or the equivalent of money) which is hazarded upon the enterprise. Those who are to deal with the corporation are publicly informed that this impersonal trader starts off with this much capital pledged to its success. Ten per cent. of the amount of the capital stock designated in the charter must be actually paid in before the corporation begins business. Civil Code (1910), § 2823 (3). The other ninety per cent. need not be paid in, provided the corporation holds unpaid stock subscriptions, bona fide taken, for that amount. *Bing* v. *Bank of Kingston,* 5 *Ga. App.* 578 (63 S. E. 652).

But the subscribers for the stock may be compelled to pay it in, and are individually liable for it whenever the interests of the corporation or of its creditors so require. Civil Code (1910), § 2823 (3). Thus, the amount paid in, or the amount paid in plus the individual liability of bona fide subscribers for the corporate stock, must always amount to as much as the capital which, according to representations made in the application for the charter, is to be employed; else the persons who, in violation of this promise and duty, organize the company and proceed to transact business in its name do not relieve themselves of personal liability for the debts

of the organization. In such cases the liability attaches to the promoters of the enterprise, not in their capacity as stockholders of the corporation, nor by reason of any contract between them and the corporation, but because they have violated the law and have broken a duty to persons dealing with the corporation as if it had been legally organized. The cause of action on this account does not arise in favor of ·the corporation, but arises in favor of those who have dealt with the organizers; that is, usually in favor of persons who have extended credit to the corporation on faith of the organizers' promise and their duty to see that it was endowed with the amount of capital stated in the charter. This cause of action does not pass to the trustee in the event the corporation is declared bankrupt. The plea in abatement setting up the pendency of the suit by the trustee in bankruptcy was properly stricken on demurrer.

3. The next question is whether the trial judge correctly held that the plaintiffs could not recover because their credit man knew at the time the goods were sold that only about ten per cent. of the stated capital had been subscribed for and paid in. From the testimony of this credit man it is not altogether plain that he knew that only this amount had been subscribed, but it is plain that he knew that only this amount had been paid in. His testimony does show, however, that organization was not complete at this time, and that he did not know that the remainder was not to be subscribed or paid in. Now "one extending credit to a corporation can not complain of acts of mismanagement on the part of officers and agents of the corporation prior to the time when the credit was extended." *Commercial Bank* v. *Warthen,* 119 *Ga.* 990 (47 S. E. 536). How far does this principle apply here? This transaction took place before the corporation formally began business, but was ratified by the corporation afterwards; for it took the goods and made payments on the account. The law does not require any part of the capital stock to be paid in until the corporation begins business; but prior to formal organization, while the necessary stock subscriptions are being obtained and other preliminaries are being attended to, many things of a provisional nature must often be done; and the law contemplates that they may be done. *Bing* v. *Bank of Kingston,* supra.

As to debts incurred by the organizers of the corporation while the affair is in this provisional state, they are liable as partners

until the corporation is duly organized and its corporate responsibility is substituted for their prior individual responsibility. In this case the responsibility was never shifted. There was no fraud and no wrong in the situation as it stood when these goods were sold. The time had not arrived when it became requisite that the full amount of the capital stock should be subscribed. These creditors had the right to act upon the assumption that these organizers would complete the organization as they had declared in the application for charter it would be completed; holding them individually liable in the meantime. What the credit man of the plaintiffs knew in this case charged the plaintiffs with knowledge that the corporation was not then legally organized, but not with notice that it would not be. The judge erred in granting nonsuit.

4. As to the point, raised by the defendants, that the liability against persons undertaking to organize a corporation is, by Civil Code (1910), § 2220, to make good "the minimum capital stock," and that the charter in the present case set no minimum, and that, therefore, no liability exists: Sometimes an application for charter recites that the capital to be employed shall not be less than so many dollars and not more than so many, or that it shall be so many dollars with a privilege of increase, and in such cases the lowest amount named is the minimum referred to in the code section; but in other cases, as in the one at bar, only one amount is named, and that, as it seems perfectly clear to us, is both minimum and maximum.

The other points made in the record are controlled by the views already set forth, and we need not enlarge upon them.

*Judgment on the main bill of exceptions reversed; on the cross-bill affirmed.*