### 5461.   GRAVES v. DENNY et al., receivers.

1. Where a decree of the chancellor clothed with jurisdiction to administer the estate of an insolvent corporation directs that its debtors be sued by the receivers appointed by the court of equity, the decree confers upon the receivers full authority to maintain against a subscriber to the capital stock of the corporation an action for the recovery of an unpaid balance of the subscription. Such a decree can be set aside only in a court of equity, and is not subject to collateral attack in another court. Nor is the validity of the decree affected by the fact that it is interlocutory (for the purpose of marshaling the assets), and not a final decree concluding the administration of the estate of the insolvent.

2. Whether a subscription to the capital stock of a defunct corporation shall be enforced for the purpose of equalizing by contribution stockholders who have paid their subscriptions in full is a matter addressed solely to the discretion of the court charged with the duty of administering the estate of the corporation. The exercise of the chancellor's discretion upon an equitable petition, in directing the receivers to sue and authorizing them to recover sums due on stock subscriptions, leaving the appropriation of the fund when collected to the determination of the court of equity, can not be brought in question by the defendant in a suit brought in pursuance of the order.

(a) A direction by the judge of a superior court to receivers appointed by

him, to collect stock subscriptions from such subscribers as in the receivers' opinion are "legally liable," is not a delegation of the court's equitable powers, but a mandatory direction to the court's servants and officers not to proceed against any apparent debtor where investigation has developed that he has a legal defense which would defeat recovery.

3. Upon the dissolution of a corporation its property and assets constitute a fund for the payment of its debts and for distribution among its stockholders, and the individual liability of stockholders is an asset of the corporation which may be enforced by a receiver for the corporation. And if a court of equity, in the exercise of its powers and in its sound discretion, determines that the assets of a defunct corporation should be marshalled, a judicial ascertainment of the amount due by a debtor of the corporation is not an essential preliminary to the bringing of an action by the receivers to recover upon the alleged indebtedness; for the suit itself, when authorized by the court of equity, is a proper means of ascertaining the amount of the debtor's liability to the corporation. A suit by the receiver on unpaid stock subscriptions is the same thing as a suit by the corporation itself.

4. The fact that a court of equity, in the exercise of its powers and discretion, is administering the estate of a corporation by the hands of a receiver, and that the distribution of the fund when collected can only be effected in a court of equitable jurisdiction, affords no bar to the collection of the assets by the processes of the common law.

5. A plea of general issue raises no issuable defense to a suit brought upon an unconditional contract in writing.

6. A plea alleging that the time of payment of an unconditional subscription to the capital stock of a corporation has been extended by its directors presents no bar to an action on the contract of subscription, when it is not alleged in the plea either that there was a consideration for the alleged extension or that the directors were authorized by the stockholders to extend the time of payment.

7. A plea alleging that a subscriber to the capital stock of an insurance company was relieved from liability because the remedy of the company was to cancel his stock and forfeit all previous payments to the company, but which failed to allege that the requisite notice prescribed by section 2396 of the Civil Code had been given to the delinquent subscriber, or that the stock had in fact ever been cancelled, is subject to demurrer, not only for these reasons, but also upon the ground that the remedy provided of cancellation of the stock and forfeiture of payments is cumulative only and does not prevent the corporation from proceeding to collect the unpaid subscription by a suit upon the original contract.

8. The provisions of section 2251 of the Civil Code, which gives any citizen the right to sue either the association or a member of the corporation, etc., and to recover from the member or members sued the amount due for unpaid stock, and which properly limits in such a case the amount of the plaintiff's recovery to the amount actually due him by the delinquent member, does not impose any limitation upon the power of a court of equity to require a complete adjudication of the rights of all parties interested in the subject-matter, nor abridge the court's power to prevent a multiplicity of suits by determining the respective rights of all

parties interested who may be before the court. This code section has no application to a suit in which the receiver is endeavoring to enforce, for the benefit of fully paid subscribers to the capital stock of the corporation, contribution on the part of those subscribers who have not paid their subscriptions to the capital stock.

DECIDED FEBRUARY 6, 1915.

Complaint; from city court of Floyd county—Judge Reece. December 30, 1913.

*Barry Wright, Dean & Dean,* for plaintiff in error.

*Maddox & Doyal,* contra.

RUSSELL, C. J. R. A. Denny, E. W. Butler, and T. K. Scott, as receivers of the Rome Insurance Company, brought an action in the city court of Floyd county against Robert W. Graves, to recover the unpaid balance alleged to be due upon an unconditional stock subscription for $94,500 to the increased capital stock of the Rome Insurance Company. The contract of subscription attached to the petition shows that the original capital stock of the company was $100,000, and states that the increase is to be first offered to its stockholders at par, and that the subscribers to the increased capital stock shall have the privilege of paying therefor in equal annual installments of one, two, three, and four years. The petition alleges, in the first paragraph, that the petitioners are the duly appointed receivers of the insurance company and have duly qualified as such. The second paragraph alleges the execution and delivery of the contract of subscription referred to above. The third, fourth, and fifth paragraphs set out separately the amounts due, according to the terms of the contract, on the first day of January, 1911, 1912, and 1913, respectively. In the answer to the petition it is admitted that the plaintiffs were appointed receivers, but it is alleged that they were appointed prior to the appearance term in the case of Miles *v.* Rome Insurance Company, that the appointment was interlocutory, and that the receivers have no legal power to bring this suit. The defendant admits the subscription, but pleads that by the action of the board of directors of the insurance company, the time of payment of the subscription was extended, and the balance owing to the company on account of the subscription as of January 1, 1911, was made payable on a basis of ten per cent. per annum, ten per cent. being payable on the first day of June, 1912, and a like amount on the first day of June thereafter. The third, fourth, and fifth paragraphs of the petition are denied, and for further

answer the defendant alleges that the plaintiffs have no legal right or authority to bring the suit, for the reason that the right to sue upon the subscription contract exists solely in the name and behalf of the Rome Insurance Company. It is further alleged in the answer (though the reason for the statement is not given) that neither the receivers nor the Rome Insurance Company have a right to sue the defendant on account of the subscription agreement, and that the only legal remedy for the enforcement of the contract, in behalf of the Rome Insurance Company or its representatives, is the right to cancel the stock on account of the failure to pay subscriptions when they become due, and to forfeit all payments made thereon.

The defendant demurred to the petition generally, on the ground that no cause of action is set forth, and specially on the grounds, (1) that the petition does not show that the receivers have authority from the court to sue upon said claim; (2) that the petition does not show for what purpose the receivers were appointed, or what powers were given them under the order of appointment; (3) that it does not appear whether the receivers were appointed by interlocutory order prior to the trial term of the case or after the facts alleged in the petition under which the receivers were appointed had been passed upon by a jury and final decree entered; (4) that it does not appear what is the character or nature of the petition under which the receivers were appointed, or what are its prayers or purposes, or what property of the Rome Insurance Company the receivers were authorized to take possession of, or what choses in action they were authorized to collect.

The petition was amended by attaching to it a copy of an order of the judge of the superior courts of the Rome circuit in the case of John M. Miles v. Rome Insurance Company et al., in which the plaintiffs were appointed receivers of the property and effects of the Rome Insurance Company and directed to take and retain possession of all its property of every kind and character until further order of the court. The order authorizes the receivers to institute and prosecute any action in favor of the Rome Insurance Company to realize and collect its assets, including actions to recover the balance due upon all stock subscriptions upon which, in their opinion, the persons making such subscriptions are legally liable. The amendment to the petition recites also that there is $245,000 of the

capital stock of the Rome Insurance Company which has been fully paid for, and that the remainder of the $1,000,000 of capital stock is represented by subscriptions of nine named individuals, of whom the defendant Graves is one.

The plaintiffs demurred to the defendant's answer, upon the ground that it set up no legal or equitable defense. They demurred to the first paragraph of the answer upon the ground that it was immaterial that the appointment was interlocutory or that the cause was not heard in term time, or that the appointment of the receivers had not been made permanent, and that the allegation that the receivers have no legal power or authority to bring the suit is a conclusion of the pleader and fails to show why or wherein they are lacking in power and authority. The second paragraph of the answer was demurred to on the ground that there was no allegation that there was a good or valuable consideration for the alleged extension of time of payment to the stockholders, or that the alleged extension was approved by the stockholders, or that the directors were fully authorized or given power by the stockholders to make such an extension. The third, fourth, and fifth paragraphs of the answer were demurred to upon the ground that they set up no defense, and the sixth, seventh, and eighth paragraphs were demurred to upon the ground that they set up incorrect conclusions of law, and especially that the facts alleged in the eighth paragraph of the answer failed to present any defense, for the reason that the provisions of section 2396 of the Civil Code merely gives a board of directors the option to forfeit and cancel stock subscriptions, and there are no allegations showing that the board of directors of the Rome Insurance Company ever complied with or attempted to comply with any of the requirements of that section of the code.

There appears in the record an amendment to the defendant's answer, setting up that the suit was not in behalf of the creditors, but a suit filed by and in behalf of the stockholders; that the creditors have no interest in the cause, and the receivers have no right to sue upon the subscription contract in behalf of the stockholders, because the Rome Insurance Company has sufficient assets with which to pay all its creditors without calling upon any subscriber to the capital stock to contribute to the payment of creditors; and that even if it were necessary to collect a part of the stock subscription, there has been no proceeding by the receivers to determine the

amount necessary to be collected from the various stock subscribers. It does not appear from the record that this amendment was allowed by the court, and there is no exception to a refusal to allow it, but it is transmitted in the record as being material to a clear understanding of the errors complained of, and the points raised by it will be dealt with, because they are raised in an amendment to the demurrer of the defendant, which amendment was allowed by the court. In the amended demurrer of the defendant it is insisted, (1) that the plaintiff's petition fails to set forth any legal necessity for a suit upon the stock subscription; (2) that there is no allegation in the petition that there are any debts owing by the insurance company which make the collection of the stock subscription necessary; (3) that there is no allegation that there has been any judicial ascertainment of the amount of the company's debts; (4) that there is no allegation of a judicial ascertainment of the amount due on the subscription, either for the purpose of paying debts or for the purpose of contribution among the stockholders of the company; (5) that the petition fails to show that the receivers have been granted any legal authority from the court of their appointment to bring the suit; (6) that the court's order attached to the petition as amended shows that the court attempted to delegate to the receivers and to an auditor the duty of determining the amount of the company's indebtedness and the liability of the stockholders on their subscriptions, and that there has been no judicial determination on this question by the court; (7) that the city court of Floyd county has no jurisdiction to hear and determine equitable questions, and the right to sue upon the subscription agreement is only cognizable in a court of equity; (8) that the petition does not allege that there are not sufficient assets of the insurance company to pay the debts of the company without calling on the stockholders upon their subscriptions, and; (9) that it does not appear that the assets of the company are insufficient, after paying its debts, to pay all of its stockholders their shares without collecting the stock subscriptions.

The trial judge overruled the demurrer to the petition as amended, and struck the answer. The pleadings and the demurrers raise the following questions, the determination of which control the case: (1) Did the receivers have the right to maintain the suit? (2) If the receivers were proper parties plaintiff, was it es-

sential to their maintaining the suit that there should appear a necessity that the unpaid subscriptions to the stock should be paid, either for the purpose of paying creditors or for the purpose of requiring delinquent stockholders to contribute to stockholders who had paid their subscriptions in full? (3) Was a judicial ascertainment of the amount due on the defendant's subscription, either for the purpose of paying debts or for the purpose of contribution, an essential preliminary to the bringing of the action by the receivers? (4) Was the city court of Floyd county without jurisdiction of the suit to enforce the collection of defendant's subscription to the capital stock, for the reason that that court has no equitable jurisdiction, and "because the right to sue upon subscription agreements is only cognizable in a court of equity." Incidental or subsidiary to these leading questions are several minor points which will be ruled upon in the adjudication of the four leading propositions.

1. It was asserted in the demurrers that if the present action can be maintained, the receivers are not proper parties to bring the suit. By attaching a copy of the order of the superior court to their petition, the plaintiffs clearly met the grounds of demurrer as originally set forth, because the order of the judge of the superior court expressly directed the receivers to sue upon all stock subscriptions due the Rome Insurance Company; and this order likewise disclosed the character and nature of the petition under which the receivers were appointed, and the prayers, purposes, and object of the petition filed by Miles, and the authority of the receivers to take possession of all the property of the insurance company. In our opinion, it was unnecessary for the petition to show whether the receivers were appointed under an interlocutory order, or after a final decree had been entered on the petition; for if the arm of equity is not long enough to reach the assets of an insolvent debtor and to hold them for the benefit of suffering creditors before a decree, then equity would fail to supply a remedy where, by reason of its universality, the law is deficient, and the court of equity could afford no relief against an impending loss until after a final decree had been rendered. Besides, as we see it, a decree of the chancellor is conclusive until it is set aside in a court of equity. It is certainly not subject to collateral attack by demurrer in a court of inferior jurisdiction. The fifth ground of the amendment to the demurrer merely charges generally that the plaintiffs' petition

fails to set forth any legal authority granted by the court of their appointment, authorizing the receivers to bring the suit, and what we have just said in regard to the ground of the original demurrer applies to it, of course.

2. The plaintiff in error, however, strenuously insists that an action for the collection of an unpaid stock subscription to the capital stock of the insurance company can not be maintained unless it is made to appear that the amount necessary to be collected, either for the payment of the debts of the corporation or for purposes of contribution, has been judicially ascertained. To our minds this would be putting the cart before the horse; for where there are a number of unpaid subscriptions to stock, the only way in which it can be ascertained what amount would be necessary to pay the creditors, especially what amount would be necessary to enable stockholders who failed to pay their subscriptions to contribute to stockholders who paid theirs, would be to ascertain by collection how many of the stockholders are insolvent, and therefore unable to contribute either to the payment of debts or to equalizing the burdens of the stockholders. We hold that the judge of the superior court, as a chancellor, had the undoubted right, in administering the assets of the Rome Insurance Company, to provide for the marshaling of all its assets; and his order attached to the plaintiff's petition is neither extraordinary nor at variance with the usual practice in equity in the administration of ordinary insolvent estates. Is there any reason why an unconditional contract of subscription to stock of a corporation should stand upon a higher or different footing than a debt of any other class? The subscription to the stock of a corporation, until it is paid, is a debt to the corporation,—nothing more, nothing less. It sometimes happens that one who has made but who has not paid in a very large subscription to the capital stock of a corporation assumes himself to be entitled to greater privileges and immunities than a subscriber to a small amount of the stock, and assumes to direct the affairs of the corporation in which he has in fact but little money invested. But this assumption finds no warrant in law or in equity, and, we may add, at least none in good morals. One who owns a majority of the paid capital stock of a corporation is legally entitled to exercise a controlling influence in the direction of its affairs; and, therefore, one who assumes to direct the affairs of a corporation without hav-

ing paid for his stock is under all the greater obligation not to refuse to make payment; and if he does refuse, either law or equity should afford prompt means by which his obligation may be enforced. The argument that the subscription to the capital stock of a corporation can not be enforced except to pay debts of the corporation, or that the subscriber should not be compelled to do so unless it is necessary for him to contribute to stockholders who have paid their subscriptions in full, not only is an argument ab inconvenienti, addressed solely to the discretion of the court charged with the duty of administering the assets of the corporation, but it has no force whatever in the face of the positive order of that court, where the court has exercised its discretion by requiring the collection of all the assets as a preliminary to distribution. In the present case the judge of the superior court of Floyd county, for apparently good and sufficient reasons, required a suit to be brought on all the unpaid stock subscriptions; for it was not denied in the defendant's answer that $245,000 of the capital stock of $1,000,000 was paid in full, and that all the remaining stock not paid (to wit, $755,000) was held by nine persons, of whom the defendant was one. The appointment of the receiver, only circumstantially it is true, but eloquently enough, bespeaks the insolvency of the Rome Insurance Company. If the $755,000, of which the defendant subscribed for $94,500, were all collected, granting that the insurance company owes no debts and that nothing more has happened than that the $245,000 paid in by stockholders in various States, as alleged in the petition, has been spent in carrying on the business, then each one of these paid up stockholders would be entitled to a contribution of over 75 per cent. in order to repay him the money expended by him in enabling the large stockholders to carry on the business; and the amount involved would be something over $185,000. But if the whole amount is not collected, it is clear that the proportional contribution to the stockholders who have paid in the $245,000 would be less, and if several of them were insolvent, and the necessary expenses of the receivership and of collecting the claims were great, the result would be entirely different. If only one of the subscriptions of the nine remaining unpaid or partly paid should be small or only partially collectible, it might happen that the fund thus received would be required to meet the expenses of the receivership and be consumed thereby. This would at least relieve that much those stock-

holders who have already paid in full their stock subscriptions. Conceding that this suit, as insisted by counsel for the plaintiff in error, is in effect a suit filed by and in behalf of the stockholders against the insurance company, and that the recovery, if any, will be applied solely for the benefit of the stockholders who have paid their subscriptions in full, we still deem that the order of the chancellor conferred upon the receivers the perfect right to sue, and authorized them to recover any indebtedness for unpaid stock subscription, leaving the appropriation of the fund thus raised to the determination of the court of equity, where the questions which it is here sought to raise are properly cognizable. To our minds there is no force in the suggestion, presented by each of the demurrers, that the judge of the superior court, by the language directing the receivers to collect from such as in their opinion were legally liable, delegated to the receivers the duty of ascertaining the necessity for collecting the unpaid subscriptions of $755,000. This was no delegation of authority, but inasmuch as the order authorized the receivers to employ counsel and gave them permission to seek further direction from time to time from the court, the language used was of itself in the nature of a direction not to bring suits, where, after due investigation, the receivers were satisfied the apparent debtor was not legally liable. It was not a delegation of the court's right to apportion the liability of the several debtors as compared with each other, but a mandatory direction not to proceed at all against an apparent debtor who was not clearly liable. We construe the order as an unequivocal direction to sue all subscribers to the unpaid capital stock unless upon an audit of the books or by an ascertainment of the facts in any other way it was clear to the receivers that the subscription had not been legally made or accepted, or that the subscription had been paid.

3. The third question presented is: Was a judicial ascertainment of the amount due on the defendant's subscription, either for the purpose of paying debts or for the purpose of contribution, an essential preliminary to the bringing of the action by the receivers? If so, section 2245 of the Civil Code, which provides that upon the dissolution of a corporation its property and assets constitute a fund for the payment of its debts and for distribution among its stockholders, and section 2249, which provides that the individual liability of stockholders is an asset of the corporation, and as such

is to be enforced by the receiver, trustee, etc., is meaningless; because there is no provision to the effect that the liability of the stockholder is to be apportioned or diminished upon any consideration or under any circumstances, nor is it declared that the "assets" shall be determined by anything other than the subscription. Certainly the corporation, if not dissolved, might sue upon the unpaid subscription to its capital stock without the necessity of showing the purposes to which the fund, when collected, was to be applied, and "a suit by the receiver on unpaid stock subscriptions is the same thing as suit by the corporation itself." *Moore* v. *Ripley,* 106 *Ga.* 556 (32 S. E. 647); *Wheatley* v. *Glover,* 125 *Ga.* 710, 730 (54 S. E. 626); *Waters* v. *Porter,* 3 *Ga. App.* 73 (59 S. E. 452). It was held in *Wheatley* v. *Glover,* supra, that in a receiver's suit for unpaid stock subscriptions it is only necessary to allege and prove that the suit is brought by authority of the court under which the receiver is appointed. "A stockholder occupies a threefold relation, —to the corporation, to other stockholders, and to the creditors." *Gress* v. *Knight,* 135 *Ga.* 62 (68 S. E. 834, 31 L. R. A. (N. S.) 900). "Subscribers to capital stock may be compelled to pay it whenever the interests of the corporation or other stockholders or creditors so require." *Rosenheim Shoe Co.* v. *Horne,* 10 *Ga. App.* 582 (73 S. E. 953). And it seems clearly held in *Commercial Bank* v. *Warthen,* 119 *Ga.* 990 (47 S. E. 536), that the right to recover for unpaid stock subscriptions passes to the receiver, as it did by the order of the judge in the present case, and must be enforced by the receiver. If, as we think, the chancellor had the right to order the receivers, as his servants, to take charge of all the assets, including the unpaid subscriptions to the capital stock, and safely keep them, subject to his future orders, an ascertainment of the exact amount necessary to be collected for the benefit of the stockholders or of the creditors was not essential to enable the receivers to carry out the orders of the court; for the reason, among others, that the chancellor could not foresee what amount would be collected, and if this had been attempted and the receivers had been ordered to sue each subscriber for a certain proportionate part which would have been the correct amount if all the assets had been collected, the purposes of the court would have been defeated, and second suits would have been necessary if there had been a failure to collect as to any one of the stockholders.

4. The collection of a stock subscription in this action is not prevented upon the ground that such demands are cognizable only in courts of equity, as insisted by learned counsel for plaintiff in error. It is true that a court of equity alone has jurisdiction to marshal assets and administer estates of insolvent debtors for the benefit of creditors and others interested in the fund, but a suit upon a promissory note which happens to be one of the assets of an insolvent trader would not in any sense be an equitable proceeding, although the suit might be an incident in the equitable administration of the insolvent estate. We can not see how an unconditional promise to pay so many dollars at fixed times, in satisfaction of a certain subscription to capital stock of a corporation, differs in any wise from an unconditional promise to pay an equal number of dollars stipulated in a promissory note. The fact that the city court of Floyd county has no equity jurisdiction to distribute the fund does not deprive it of its undoubted right to entertain a suit and issue a common-law judgment and execution to raise the fund which may thereafter be distributed by the appropriate court of equity.

5. Having disposed of the main contentions of the plaintiff in error, we come now to deal with rulings in which it is insisted that the court committed error even if the suit was properly brought and the plaintiffs were prima facie entitled to recover. It is insisted by counsel for the plaintiff in error that at least the fifth, sixth, and seventh paragraphs of the defendant's answer, which categorically denied the fifth, sixth, and seventh paragraphs of the plaintiffs' petition, in accordance with the "Neal act," should not have been stricken, but that the issue raised by these paragraphs of the answer should have been submitted to a jury. Nothing is better settled than that the plea of general issue raises no issuable defense to a suit upon an unconditional contract in writing. The defendant having in his answer admitted the execution and delivery of the contract, the fifth, sixth, and seventh paragraphs of his answer as pleaded presented no defense to a recovery upon the contract according to its terms. It amounted to a statement simply that "I promised to pay the plaintiff, I have not paid him, but I do not owe him."

6. The demurrer to the second paragraph of the answer was properly sustained. In this paragraph of the answer the defendant

sought to set up, in bar of the action, an extension of time of payment, alleged to have been granted by the directors of the corporation. There was no allegation that the extension of time of payment was supported by a consideration, nor any allegation that the directors were authorized to alter the contract by extending the time of payment, or that the extension was approved by the stockholders. Clearly the directors were not authorized to extend the time of payment of the stock subscription, without a consideration which would be equal to the value of the use of the money in the business, and in any event an extension which would spin out for ten years the time for the collection of the amount due on the capital stock of the corporation would not be effectual unless approved by the stockholders; for the alleged agreement. amounted pro tanto to a release, inasmuch as the subscription contract bore no interest, and it is not averred in the answer that the principal of the subscription was to bear interest for the period of ten years for which it was extended, and for this period of time the interest when compounded would amount to as much as the original subscription. The alleged release therefore amounted in effect to a donation to the defendant of an amount equal to his original subscription, which must necessarily have been a charge during the period of ten years on those stockholders who had paid for their stock in full. The court was right to strike this paragraph of the plea. See 1 Thompson on Corporations, §§ 760, 761, 763, 766; Upton *v.* Tribilcock, 91 U. S. 45 (23 L. ed. 203) ; Cartwright *v.* Dickinson, 88 Tenn. 476 (12 S. W. 1030, 7 L. R. A. 706, 17 Am. St. R. 910) ; Putnam *v.* New Albany R. Co., 16 Wall. 390 (21 L. ed. 361) ; *Beam* v. *Floyd County Farmer's Union,* 8 *Ga. App.* 399 (69 S. E. 225).

7. The eighth paragraph of the defendant's answer sets up that a forfeiture of the stock is the sole remedy in this case. It is to be borne in mind that the defendant's indebtedness evidenced by a contract of subscription for the insurance company's stock was not for the original stock, but was created by a subscription to an increase in the capital stock. For this reason section 2396 of the Civil Code has no bearing, and the defendant's plea was without merit. In the next place, this paragraph of the answer was properly stricken because, under the provisions of section 2396, the cancellation of stock for the non-payment of subscription, and the

forfeiture of payments previously made, is a matter altogether optional with the board of directors of the corporation; and in the defendant's answer there was no allegation that the directors had ever declared the defendant's stock and all previous payments made thereon forfeited, or that the directors complied or attempted to comply with the provisions of the section by giving the defendant notice as required thereby. Aside from all this, the right of forfeiture is merely a cumulative remedy, and does not impair the right to enforce payment by suit. After their appointment, the receivers stood in the place of the corporation and its directors, and if the right to cancel still existed, it was dependent for its operation and exercise upon the option of the receivers. 1 Thompson on Corporations, § 772, and citations; *Hightower* v. *Thornton,* 8 *Ga.* 486 (52 Am. D. 412).

8. As we view the case, the amendment to the petition plainly identified the action as a demand on the part of the receivers in behalf of the paid-up stockholders, who, in order that they might have their pro rata share of the assets, had paid $245,000 of their money into the corporation, which had gone out of business. Section 2249 of the Civil Code declares that "such individual liability shall be an asset of such corporation to be enforced by the assignee, receiver, or other officer having the legal right to collect, marshal, and distribute the assets of such failed corporation." To enforce the liability upon the contract of subscription it was not necessary to apply to a court of equity, although the direction of such a court was essential to the marshaling and distribution of the assets of the failed corporation as a whole. A corporation's assets of every description constitute a fund, first, for the payment of debts, and then for equal distribution among its members; and to this end the superior court of the county where the corporation was located had authority to appoint receivers to properly administer such assets under its direction. Civil Code, § 2245. Certainly this section would be without meaning if the superior court could not direct the receivers to sue debtors of the corporation (who refused to pay voluntarily), in order that the fund—as to which ordinary creditors are preferred creditors and stockholders secondary creditors—might be raised. The statute is silent as to the manner in which unpaid stock subscriptions are to be collected, but it authorizes the superior court to appoint a receiver, and under proper re-

strictions the receiver is to administer the assets under the direction of the court. Section 2251 of the Civil Code, which authorizes suit against members of a private association, joint-stock company, or existing or dissolved corporation, to recover a debt due by the association or corporation of which they are or may have been members, or for the appropriation of money or funds in their hands to the payment of such debt, has no application to a case like the present. That section gives any citizen the right to sue either the association or a member of the corporation, or any other person liable, and to recover of the member sued the amount due for unpaid stock in his hands or other indebtedness. The statute confers upon a creditor of a corporation the right to hold any member of the corporation who has not fully paid up his stock liable for the debt of the corporation to the extent (and justly to no greater extent) that the defendant was indebted to the corporation on unpaid subscription to stock; and, of course, in such a case the law carefully guards the rights of all parties by providing that if the debt of the member to the corporation be greater than the plaintiff's demand, the plaintiff can recover only so much as will discharge the obligation of the corporation to himself. This just limitation upon the right of the creditor of a corporation to charge the subscriber to the capital stock with no more than is necessary has no pertinence to the exercise by a court of equity of its prerogative of marshaling the assets of a debtor in a complete and final administration of his assets.

Learned counsel for the plaintiff in error insist that section 2251 of the Civil Code provides how receivers can sue on unpaid subscriptions, and that the provisions of that section limit the amount that can be recovered by receivers to an amount sufficient to satisfy such debts. We can not concur in this opinion. True, no more than this amount could be equitably retained, but it is for the court, upon a full adjudication of the case, to determine what amount will be necessary in order to equalize all stockholders; and, for reasons heretofore stated in this opinion, these facts can not be ascertained in advance of a final decree by the court of equity distributing the fund, and it is to be presumed that the court in molding the decree will do equity.

It seems that no case identical with that at bar, in the respect that the suit by the receiver was brought on behalf of fully-paid

stockholders against another stockholder, whose subscription was not fully paid, has been adjudicated in this State; but in *Hightower* v. *Thornton*, supra, it was held that unpaid subscriptions to the capital stock of a corporation are corporate property which can be reached by the creditors in a court of equity, and this right exists independently of any statutory provision. Since the decision in that case, sections 2245 to 2249 have been embodied in the Civil Code; and the statement that unpaid subscriptions may be reached in a court of equity does not amount to a denial of the proposition that a court of equity, by means of a receiver, may use a court of law in aid of the collection of the assets which are to be distributed. The suit in *Robinson* v. *Bank of Darien*, 18 *Ga.* 65, was an equitable proceeding, and in that case the plaintiffs were naturally confined to the precise amount of the debt, because the suit was against the State of Georgia as a stockholder, and was maintainable only by consent of the State and upon terms proposed by the State, when, "disrobing herself of her sovereignty, she gracefully and magnanimously pledged her faith to pay to the claimants whatever sums they should be found legally and justly entitled to." *Stinson* v. *Williams*, 35 *Ga.* 170, was a suit under the provisions of section 2251, by a creditor against a stockholder, and so was *Beck* v. *Henderson*, 76 *Ga.* 360; and, of course, in both of those cases the single plaintiff was not permitted to collect more than the amount due him and thus impair the ability of other creditors to collect their claims. In *King* v. *Sullivan*, 93 *Ga.* 621 (20 S. E. 76), and *Brobston* v. *Downing*, 95 *Ga.* 508 (22 S. E. 2277), it was held that unpaid stock subscriptions are assets of an insolvent creditor which may be applied for the benefit of its creditors. It seems to follow, under the provisions of section 2245, that these assets might have been applied by equitable distribution among the members of the corporation in equalizing their comparative losses, if there had been no creditors, or after satisfying the creditors, if there were any. *Fouché* v. *Bank*, 110 *Ga.* 827 (36 S. E. 256), *Harrell* v. *Blount*, 112 *Ga.* 711 (38 S. E. 56), and *Morgan* v. *Gibian*, 115 *Ga.* 145 (41 S. E. 495), which are cited by counsel for the plaintiff in error, are each of them cases in which the creditors brought suit either against the corporation and the subscribers to the capital stock, or against stockholders whose subscriptions were unpaid, to recover from the unpaid subscribers a specific amount; and these cases fall under the provisions of section 2251, which, as we have

already said, has no reference to suits brought by a receiver to recover unpaid subscriptions to the stock to the end that the assets of the corporation may be marshalled in a court of equity. We do not think our views in the present case are in conflict with the rulings of the Supreme Court in the case of *Tichenor* v. *Williams Block Pavement Co.,* 116 *Ga.* 303 (42 S. E. 505), upon which counsel for plaintiff in error rely as conclusive authority to support their contentions. It was held in that case that a court of equity will not authorize or direct a receiver of a business corporation to sue for and collect unpaid subscriptions when it appears that there is no existing creditor who has an unsatisfied debt against the corporation, *and the only purpose for which such authority is sought is to provide a fund for meeting obligations on the part of the corporation which will arise in the future and at a time when the corporation will have no solvent stockholders.* The purpose of the suit brought by the receivers against Graves was to provide a fund for meeting obligations on the part of the corporation, and the proceeding was merely ancillary to the proceeding in equity, by which it was sought to finally administer the assets of a defunct corporation, paying creditors if necessary, equalizing stockholders if necessary, and distributing the remaining assets, if any, among those entitled to receive them. And it is well settled that equity, having assumed jurisdiction, is disposed to administer complete justice, and not grant relief by piecemeal only. In *Tichenor's* case there were no fully-paid stockholders, and all of the stockholders had paid in the same amount. So that any collection, so far as the stockholders were concerned, would have been the raising of a fund to meet an eventuality or contingency which could not arise (if it was ever possible for it to occur), until after the corporation was dissolved. The present case deals with a condition which already exists, in which $245,000 belonging to one set of stockholders had been expended for the benefit of the non-paying stockholders, as well as in behalf of themselves. There is respectable authority to the effect that before a court of equity will authorize a receiver to collect the unpaid subscriptions to the capital stock of a corporation, there must be a judicial ascertainment of the corporate debts (7 Cook on Corporations, § 207-208), but the proposition stated has no application in this State, in view of the provisions of sections 2245 and 2249 of the Civil Code. In this State all the debts, including subscriptions to the capital stock of the corporation, are

assets to be administered by the receiver, and each subscription is a debt to the corporation, and by express statute a court of equity may exercise its discretion in ascertaining the amount of the corporate debts either before or after the corporate assets have been marshalled and collected.

*Judgment affirmed. Broyles, J., not presiding.*